## W. R. BOUNDS v. HUBBARD CITY.

Decided October 19, 1907.

**1.—Breach of Contract—Specific Performance—Equity.**

Upon the breach of its contract by a waterworks company to furnish a city with an adequate supply of water for domestic purposes and for fire protection for a period of forty years, a court of equity has the power to decree and enforce a specific performance of the contract by the company. And the fact that the contract between the city and the company contained a provision by which the city was given the right to buy the waterworks plant did not deprive the city of its equitable remedy for specific performance.

**2.—Same—Evidence.**

In a suit by a city against a waterworks company to enforce specific performance of a contract to furnish the city with adequate fire protection, evidence considered, and held sufficient to support a finding that the company had breached its contract.

**3.—Contract—Interpretation by Parties.**

Where the language of a contract is doubtful, the practical construction deliberately given it by both parties, should control its interpretation.

**4.—Contract with City—Evidence.**

A document containing a proposal to construct a waterworks plant for a city, signed by the president of the waterworks company in behalf of the company, and by the mayor and aldermen in behalf of the city, and which document was thereafter presented to the city council and by it adopted by proper official action, constituted a contract between such city and company, and an ordinance simultaneously passed granting the franchise contemplated by the document, was not the contract.

**5.—Assignment of Error.**

An assignment of error which contains several distinct propositions is in violation of the rules, and does not require consideration.

**6.—Contract—Specific Performance—Injunction.**

In a suit by a city to compel specific performance of its contract by a waterworks company in the use of certain machinery, and for injunction to prevent the removal of said machinery and the substitution of other machinery, the fact that the machinery then in use by the company and ordered by the court to be continued in use, will wear out, thereby necessitating the installment of other machinery of like kind, furnishes no sufficient reason for denying the enforcement of the contract by a court of equity.

**7.—Same—Fire Protection—Decree—Certainty.**

The use of the phrase "fire protection" in a decree requiring a waterworks company to furnish fire protection to a city, is not too indefinite and uncertain

to be enforced in equity by the ordinary process of the court.    Said phrase defined.

Appeal from the District Court of Hill County.    Tried below before Hon. W. C. Wear.

*E. W. Bounds* and *Morrow & Smithdeal,* for appellants.—The contract declared on by the appellee is not one upon which specific performance could be directed by court of equity.    Lone Star Salt Co. v. Tex. Shortline Ry. Co., 99 Texas, 434; Texas & Pacific Ry. Co. v. Marshall, 136 U. S., 393; Northern Pac. Ry. Co. v. Dustin, 142 U. S., 509.

The provision of the contract which appellee seeks to enforce covers a long period of time, beyond the life of the plant in actual existence, and is subject to the changes arising from lapse of time, and wear and tear of the machinery and growth of the community; and required the supervision of the court over the personal service of superintending, managing and operating the machinery and the supervision of the court over the construction, repair and operation of the plant for a long period of time, and for these reasons is not such a contract as entitles the appellee to the relief sought. Pomeroy's Equity, art. 1402-1405 and notes; Richmond v. Dubuque, 33 Iowa, 487; Blanchard v. Detroit, 31 Mich., 57; Shephard v. Groff, 11 S. E. Rep., 998; Texas & P. Ry. Co. v. Marshall, 136 U. S., 406; Wingo v. Hardy, 10 So. Rep., 661; Marble Co. v. Ripley, 10 Wallace, 359.

The provision in the contract which gave the city the option to purchase the plant provided a remedy at law, rendering the contract not such as requires enforcement by a decree of specific performances.    Rutland Marble Co. v. Ripley, 10 Wallace, 359; Electric Light Co. of Mobile v. Mobile, 19 S. Rep., 723; Sturgis v. Galindo, 59 Cal., 31; 42 Am. Rep., 249; Iron Age Co. v. Western Union Tel. Co., 83 Ala., 510.

The court erred in its refusal to sustain the objection of the defendants to the proposal in writing which was set out in plaintiff's petition as furnishing a basis of the contract, said objection being upon the grounds that the contract between the plaintiff and defendant was not embraced in said proposal but was merged and embraced in the ordinances of the city granting the franchise to the said defendants, which was embraced in chapter 20 of the ordinances of said city, which ordinances were enacted subsequent to the presentation of said proposal; and said proposal was admissible only, if at all, on the issue of the interpretation of said ordinances. State v. Paris, 55 Texas, 80; San Antonio v. Berry, 92 Texas, 325.

Sixth Assignment of Error.—The court erred in the third paragraph of its charge in that there was no evidence that the defendants had disconnected the machine originally put into said plant of the defendants, nor that any demand had been made for the water for any purpose contemplated in the contract which had been denied or refused, nor any evidence that any fire had occurred at which defendants had failed to supply water as required in the contract, and it was error to submit to the jury the question as

to whether or not there had been a breach of the alleged contract in the absence of evidence that there had been such breach.

The court erred in issuing an injunction in this case in that it appears from the evidence that the allegations in plaintiff's petition to the effect the defendants obligated themselves to furnish direct pressure, are not sustained, and for the reason that the undisputed evidence shows that the duration of the contract is greater than the life of the machine, which the court has ordered to remain in the plant. Electric Light Co. of Mobile v. Mobile, 19 S. Rep., 720; Sturgis v. Galindo, 40 Am. Rep., 239; Louisville Ry. Co. v. Bodenschatz, 39 N. E. Rep., 703; Rust v. Conrad, 11 N. W. Rep., 268; Richmond v. Dubuque, 33 Iowa, 487; Shephard v. Groff, 11 S. E. Rep., 998, 34 W. Va., 125; Pomroy's Equity, 2773.

The term "fire protection" is an indefinite term, and however defined, depends not alone upon the manner or methods of furnishing water, nor the amount of water or pressure furnished by appellant, but necessarily contemplates the proper use of the water so furnished, by the fire department, and such proper use further depends upon the equipment of the fire department and the skill of the firemen, and is therefore too uncertain to be enforced in equity by the ordinary processes of the court. F. F. P. Co. v. City of Dallas, 5 Texas Ct. Rep., 295; Bomer Bros. v. Canady, 55 L. R. A., 328; Stanton v. Singleton, 47 L. R. A., 334; Schwanebeck v. Smith, 24 L. R. A., 168; Blanchard v. Detroit R. R. Co., 31 Mich., 44 to 52 (18 Am. Rep., 142); Buck v. Smith, 29 Mich., 166 (18 Am. Rep., 85); Beck v. Allison, 56 N. Y. 367 (15 Am. Rep., 430); Rutland Marble Co. v. Ripley, 77 U. S., 340; Simkin's Equity, page 407; Pomeroy's Specific Performance of Contracts, secs. 159, and 303 to 312 inclusive.

*Henry Bishop, Works & McKee* and *Vaughan & Basham,* for appellee.—Specific performance will be granted in all cases when the dispensation of exact justice would seem to require it. The general ground for the relief being the inadequacy of damages, and especially where the interest of the public is to be subserved by the performance of a contract. Lone Star Salt Co. v. Texas Short Line Ry. Co., 99 Texas, 434; Hubbard City v. Bounds, 95 S. W. Rep., 69, former appeal of this case; Everly v. Driskill, 58 S. W. Rep., 1046; Union Pacific Ry. Co. v. Chicago, Rock Island & Pacific Ry. Co., 163 U. S. 564 (Book 41, page 265, L. C. P.); Joy v. St. Louis, 138 U. S. 34 (Book 34, pages 843, L. C. P.); Rock Island Ry. v. Denver, Rio Grande Ry., 143 U. S., 618 (Book 36, pages 277, L. C. P.); Southern Ry. Co. v. Franklin & P. Ry. Co., 44 L. R. A., 297; The Franklin Telegraph Co. v. Harrison, 145 U. S., 462 (Book 36, L. C. P., 777); Prospect Park & Coney Island Ry. Co. v. Coney Island & Brooklyn Ry. Co., 144 N. Y., 152 (26 L. R. A., 610); Schmidt, Trustee, v. Louisville and Nashville Railroad Co., 38 L. R. A., 809; Brownell v. Old Colony Ry. Co., 29 L. R. A., 169; Bass v. Metropolitan West Side Elevated Railroad Co., 39 L. R. A., 711; Bispham's Principles of Equity, 3d ed., sec. 371 and authorities cited.

TALBOT, ASSOCIATE JUSTICE.—This is the second appeal in this case. The former appeal was from a judgment in favor of the present appellants, which judgment was by this court, reversed and remanded. Hubbard City v. Bounds, 95 S. W. Rep., 69. This suit is one instituted by the appellee, Hubbard City, to compel spe·cific performance of a contract entered into between it and appellants for the construction and operation of a waterworks plant or system in said city, and to enjoin a breach of said contract on the part of appellants. The second trial in the District Court resulted in a verdict and judgment for appellee, perpetuating the injunction and directing that the contract be specifically performed substantially as prayed for, from which appellants have appealed.

The contract sought to be enforced is as follows: "Whereas a system of waterworks is deemed a public necessity, not only as a means of fire protection, but especially for the general good and benefit accruing to the citizens at large in advancing the stability of your city, and for sanitary and other advantages derived; now, therefore, we respectfully offer for your acceptance, the following proposition and contract for the establishment of a waterworks system in your city, namely: That for and in consideration of forty-five hundred dollars ($4500) in Hubbard City 6 per cent. waterworks bonds paid to us in advance, and other valuable considerations hereinafter named, we, the said Hubbard City Waterworks Company of Hubbard City, Hill County, Texas, do hereby agree to erect and establish in your city a system of waterworks, comprising one Standard Duplex pump of ample daily capacity, boilers of ample power to operate the pump, pump and boiler house ample size (if necessary a stand pipe 12 feet in diameter by 100 feet high, same shall rest on an adequate foundation) 1000 feet of standard cast iron pipe, size six inches, 6000 pounds of special casting for connections, etc. Said pipe to begin at pumping station and to be laid in such streets as your honorable body may direct, with due regard to the important parts of the city; 10 double nozzle standard fire hydrants, said hydrants to be located at such points along the line of main line of pipe as your honorable body may determine. Combination water gauge to show the pressure in main and height of water in stand pipe, and all valves, fittings and appliances to make the system complete in every respect, of first-class material and machinery erected and placed into position by experienced mechanics. The said system to have for its water supply the lake or reservoir located south of the city and known as the Hubbard City Lake Company's property, bought of James R. Jones, and the said Hubbard City Waterworks Company agrees to increase the pumping capacity at any time the demands of the city may warrant, and to extend the main pipe at any time your honorable body may require, provided that a fire hydrant be placed at every 400 feet of said extensions. (All fire hydrants to be under the control and care of the chief of the fire department or whomsoever your body may appoint for the prevention and extinguishing of fire.) They, the said Hubbard City Waterworks Company, proposes to maintain this system of waterworks in a good and efficient working order during the term

of this contract. And further agrees that the rates to be charged your citizens for water shall be established by taking the average rates charged in cities of approximate population. In consideration of the establishing of a system of water works as above described, and the benefits to be derived therefrom, the city shall grant a license to carry on the business of supplying water to individuals, firms and corporations within or about the city limits, together with the right of way through all streets, alleys and public grounds for the laying of mains, fittings and lateral connections, and all appliances for the storing and conducting of water, subject to the ordinary municipal regulations. The said water company agrees to restore all streets and alleys to their original condition as near as possible. The city further agrees to pay for fire protection from the fire hydrants to be located, the sum of two hundred and fifty dollars ($250) per annum, payable quarterly in advance out of the city's general fund for a period of eighteen years, and for the unexpired term of this contract, which shall be twenty-one years, the city agrees to pay the sum of five hundred dollars per annum quarterly in advance, out of the general fund, for the said fire hydrants to be for fire protection, and for all additional fire hydrants that may be located from time to time the sum of fifty dollars yearly for each hydrant during the term of this contract. All yearly rentals to be paid quarterly in advance. All fire rentals shall terminate in forty years from date of completion of plant. It is agreed that said water works company shall have the right to issue upon said waterworks plant first mortgage bonds, not to exceed eight thousand dollars, for the purpose of aiding in the construction of said plant, and the city of Hubbard is to hold a second mortgage lien upon all property, both real and personal, belonging to said plant, to indemnify said city in full performance of this contract for the term of forty years. It is further agreed that the said waterworks company shall have the right to operate an ice factory or any other enterprise in connection with the waterworks.

"It is also agreed that the city of Hubbard shall have the right every five years to purchase the waterworks system at a valuation to be determined by a board mutually selected by the city and said waterworks company. In the event the said city purchasing the said plant it shall have a credit for the unearned part of the above forty-five hundred dollars.

"It is further agreed that the city shall pass all ordinances in the furtherance of the rights herein granted and for the protection of the waterworks plant.

"Signed the 5th day of February, A. D. 1900."

This instrument was signed by Hubbard City Waterworks Company, acting through its president, E. Jarvis, and by T. B. Whorton, as mayor, and W. E. Weatherby, as secretary of said Hubbard City; and also by the then several aldermen of said city. It was then brought before the city council of appellee, at a meeting thereof, on or about the 5th day of February, 1900, and was, by said council, accepted and adopted. On the same day the contract was

made and accepted by the said city council of appellee, said council passed the following ordinance:

"Chapter Twenty.      A franchise for the Hubbard City Water-works Company."

"Art.      CXXXIV.      Be it ordained by the City Council of Hubbard City that a franchise be and the same is hereby given in and granted unto the Hubbard City Waterworks Company, authorizing said waterworks company, its successors and assigns, to construct and operate a system of waterworks in said town, for a period of forty years, with the right and privilege of supplying the town of Hubbard City and the inhabitants thereof with water for fire protection, domestic and other purposes, with an option reserved by the town of Hubbard City to purchase said waterworks plant at the expiration of five years from date, and every five years thereafter, at a valuation to be determined by a board mutually selected and agreed upon by the town of Hubbard City and the Hubbard City Waterworks Company, its successors or assigns.

"Sec. 1.      That the said waterworks company shall have the right to use and occupy any and all the streets, avenues, alleys and highways of this city for the purpose of laying the necessary pipes to carry the water to the various places convenient and necessary to the city and other patrons of said company, and, for this purpose, may dig ditches and trenches over and across such streets, avenues, alleys and highways and sidewalks, provided such ditches and trenches shall be filled up promptly and the ground placed in as good condition as in the first instance; and provided further, that said waterworks will hold and save harmless the town of Hubbard City from any and all dangers arising from any negligent use or occupancy of said streets and other thoroughfares hereinbefore mentioned.

"Sec. 2.      It shall be the further duty of the said waterworks company to furnish water to any citizen of Hubbard City, residing within the limits of the city at the usual rate, to be determined by the rate charged other citizens of said town, upon demand made in writing designating the place where said water is required and signed by the party making application, provided, said waterworks company shall not be required to furnish water under certain circumstances unless the party applying therefor shall obligate himself or themselves in a sufficient guaranty to take said water for a period of not less than one year.

"Sec. 3.      That all ordinances and parts of ordinances in conflict with the provisions hereof, be and the same are hereby repealed.

"Passed and approved this 5th day of February, A. D. 1900.
Attest:                                T. B. Whorton, Mayor of
      W. E. Weatherby, Secretary,            Hubbard City.
      Hubbard City, Texas."

About a month or six weeks after the foregoing contract was entered into, and the ordinance passed, appellants had plans and specifications prepared for their guidance in getting contracts for the construction of the waterworks plant. These plans and specifi-

cations were not presented to the city council at the time the contract was made or afterwards; but were used in constructing said plant; and the same was built according to said plans and specifications. Said specifications had written or printed upon them the following: "Copy of specifications for building a waterworks plant in Hubbard City, Texas, in 1900;" and provided, among other things, "The plant will consist of a power house, to be located on the bank of the lake, about 1¾ miles west of Hubbard City, with boiler, feed pump and appurtenances; a pumping plant located in pit in power house; of one compound duplex steam pump, of 500,000 gallons, nominal capacity, with all appurtenances, and connections. A main pipe line, consisting of 14,600 feet of 6-inch, and 6,600 feet of 4-inch cast iron pipe, together with necessary special castings, gate valves, fire hydrants and fixtures. And one steel standpipe, 12 feet in diameter by 100 feet high, with masonry foundation. There shall be one compound duplex engine, with a capacity for pumping 500,000 gallons of water in 24 hours, against a pressure of 150 pounds per square inch, with 75 pounds steam pressure at chest of engine, etc."

A standpipe of the dimensions called for in the specifications was erected; and for the purpose, and with a view of complying with the terms and requirements of the contract declared on by appellee, the Hubbard City Waterworks Company, originally installed, as a part of the waterworks plant, a standard duplex pump of 500,000 gallons daily capacity, and one forty horse power engine and boiler. This pump, engine and boiler were of ample daily capacity to furnish, and did furnish a sufficient supply of water for domestic use, fire protection, and pressure sufficient for the purposes of fire protection, and was kept in use until about the — day of July, 1904. In June, 1903, the appellant, W. R. Bounds, acquired and became the owner of all the capital stock of the Hubbard City Waterworks Company and about the — day of July, 1904, and without the consent of appellee, he, and said company, discontinued the use of said duplex pump, forty horse-power engine and boiler in connection with the waterworks system, and substituted therefor a smaller pump of not exceeding 192,000 gallons daily capacity, and a ten horse-power gasoline engine. The evidence is also sufficient to warrant the conclusion that, equipped and maintained with the small pump and gasoline engine, the waterworks plant is inadequate to accomplish all the purposes contemplated and intended by the parties to the contract; that this pump and engine, used either in connection with the standpipe or operated so as to force the water directly through the pipes, will not furnish sufficient pressure to throw the water with sufficient force and distance for effective fire fighting purposes and fire protection; that the pressure furnished by the large duplex pump and engine originally installed, when fighting fire, was nearly double the standpipe and smaller pump and gasoline pressure; that the pressure afforded by the small pump and gasoline engine, which were being used when this suit was instituted, is only sufficient to throw two streams of water about 40 feet; that for ordinary fire

purposes at least two streams of water are necessary to furnish reasonable fire protection, and sometimes three or four streams are required for that purpose. The evidence further shows that, while the large duplex pump and 40 horse-power engine and boiler are not actually disconnected from the waterworks system, yet when they are not regularly used and the boiler permitted to get cold, it would take several hours to get them in operation; and that these appellants intended, before and at the time this suit was brought, to permanently abandon or discontinue the use of said large pump and engine; that appellants uniformly, from the time of the completion of the waterworks plant up to the time the use of the large pump, engine and boiler was discontinued at the direction of appellant, Bounds, furnished direct pressure, or pressure applied directly to the water in the pipes from said large pump and engine, whenever requested to do so.

*Opinion.*—The court did not err in refusing to give appellant's requested charge, directing a verdict in their favor. This charge was not warranted upon either of the grounds urged. The contention that "the contract declared upon by plaintiff is one upon which the remedy of specific performance is not available," was made on the former appeal in this case, and decided against appellants. Hubbard City v. Bounds, *supra.* We then said: "Aside from the long period of time that the contract has to run, it is believed that, in the specific performance of that provision of it sought to be enforced in this suit, none of those difficulties or objections which have been recognized in adjudicated cases as furnishing sufficient reason for denying the remedy, will be encountered. Nor do we think it can reasonably be contended that a suit at law would afford redress for the alleged threatened injury in this case. It is well settled that, if the remedy in such an action be not adequate, full and complete equity will interpose, and compel the specific performance of the contract. . . . Fire protection was the paramount consideration in view, and a decree for specific performance of that provision of the contract, providing the method and means of securing it, would involve, it occurs to us, neither the exercise of skill, judgment nor such service or supervision on the part of the court as would require a denial of the relief." Citing, Southern Railway Co. v. Franklin & P. Ry. Co. (Va.), 32 S. E. Rep., 485; 44 L. R. A., 297; Joy v. St. Louis, 138 U. S., 34; 11 Sup. Ct., 243; 34 L. Ed., 843; Franklin Tel. Co. v. Harrison, 145 U. S., 459; 12 Sup. Ct., 900; 36 L. Ed., 776. No satisfactory reason is given now, why we should change the views then expressed, and we adhere to them.

The provision in the contract which gave appellee the right to purchase the waterworks plant, is not a remedy at law which deprived it of a specific performance of the contract. This was but a privilege or option granted to the city to be exercised or not at its pleasure, and could in no sense be considered as a legal remedy affecting appellees' right to the relief sought.

Nor do we think, "the evidence was conclusive and undisputed

that the appellants never failed or refused, nor been unable to furnish an adequate supply of water for fire protection and a sufficient pressure for that purpose." Our conclusions of fact settle this question against the views of appellants. The evidence was conflicting and of such a character that the court was not authorized to say that, as a matter of law, no breach of the contract was shown. The contract provided that the system of waterworks to be established by appellants should comprise "one standard duplex pump of ample capacity, boilers of ample power to operate the pump, and that said waterworks system should be maintained in good and efficient working order during the term of the contract." To meet this provision of the contract, the waterworks company originally installed a standard duplex pump, with a capacity of pumping 500,000 gallons of water in 24 hours, together with a forty horsepower engine and boiler. This pump, boiler and engine were used in the operation of the plant for about four years, or until such use was discontinued by appellant Bounds. During this period of time, whenever requested by the city, or its fire department, direct pressure was given by the waterworks company, by means of this large pump, engine and boiler. This action of the waterworks company, taken in connection with the other evidence in the case, is sufficient to support the conclusion that said company interpreted and understood the phrase of "ample daily capacity," used in describing the pump stipulated to be used in the operation of the waterworks plant, to mean and require the use of a pump, engine and boiler possessing a capacity of pumping 500,000 gallons of water in 24 hours; that direct pressure in case of fire was contemplated, and that the substitution and use of the single cylinder pump, with a capacity of only about 8,000 gallons of water per hour, or 192,000 gallons in 24 hours, instead of the duplex pump originally installed, materially weakened the pressure to be obtained in fighting fires, impaired and rendered inadequate the waterworks plant for that purpose, and constituted a violation of the contract. Any uncertainty or doubt as to the terms of the contract with reference to furnishing direct pressure for fire fighting purposes is removed by the evidence and the interpretation of them by the parties. As has been seen, for about four years the Hubbard City Waterworks Company and appellee proceeded under the contract upon the theory that by its terms the company was obligated to give direct pressure in case of fire whenever requested. In accordance with this entertained theory and view of the contract, direct pressure was by the company so furnished for four years. It has been held in this State that where the language of the contract is doubtful, the "practical construction deliberately given it by both parties, should control its interpretation." Ry. v. Johnson, 74 Texas, 256.

Appellants' second assignment of error complains of the court's action in refusing to sustain their objection to the introduction in evidence of the instrument in writing set out in appellee's petition, and alleged to be the contract entered into between the water-

works company and appellee for the construction of the waterworks plant. This instrument is copied in the former part of this opinion, and referred to as the contract sought to be enforced. The objection urged to the introduction of the instrument was, in effect, that it constituted a mere proposal on the part of the waterworks company to construct the waterworks plant, and not the contract itself; that the ordinance granting the franchise to the waterworks company, which is also copied in the former part of this opinion, constituted the contract between the parties and embraced its terms. There was no merit in this objection, and it was properly overruled. Clearly, this instrument constituted the contract entered into for the establishment of the waterworks plant constructed by the waterworks company. It was signed on the part of the waterworks company by its president, and for the city by its mayor and aldermen. It was then presented to appellee's city council at one of its meetings and adopted and made the contract of said city by proper official action on the part of said council. The passage of the ordinance referred to was the action alone of the city council, and in which appellants had no voice or right to participate. It was but the granting of the franchise contemplated and provided for in the contract previously made, as was therein stipulated should be done. What is here said disposes of appellants' objections to the court's charge, as contained in their third, fourth, fifth and eighth assignments of error, said assignments being based and urged upon the assumption that the ordinance above mentioned constituted the contract between appellants and appellee, and not the instrument declared by appellee to be the contract.

The sixth assignment of error, which is submitted as a proposition, complains of the third paragraph of the court's charge, and, contains, we think, several distinct propositions, in violation of the rules, and might properly be disregarded altogether. We are of the opinion, however, that neither of the objections urged to the charge is well taken.

We find no reversible error in the fourth and fifth paragraphs of the court's charge; and the ninth, tenth, eleventh and twelfth assignments of error will be overruled.

Nor did the court err in refusing to give appellants' special charges referred to in assignments thirteenth, fourteenth, fifteenth and sixteenth. These charges, in so far as they contain correct propositions of law applicable to the facts, were fully covered by the court's main charge and the special instructions given at the request of appellants.

The seventeenth assignment of error is to the effect, that the court erred in issuing an injunction in this case: (1) Because it appears from the evidence that the allegations in plaintiff's petition, to the effect that appellants obligated themselves to furnish direct pressure, are not sustained. (2) Because the undisputed evidence shows that the duration of the contract is greater than the life of the machine, which the court has ordered to remain in the plant. This assignment is violative of the rules, in that it contains two separate and independent propositions, but we have

considered it, with the conclusion reached, that it points out no reversible error. The evidence was sufficient, as we have held under another assignment, to sustain the allegations relating to appellants' obligation to furnish direct pressure, and the fact that the machinery, ordered by the decree of the court to be used in the operation of the waterworks plant, will wear out, thereby necessitating the installment of other machinery of like kind during the execution of the contract, furnishes no sufficient reason for denying the enforcement of the contract by a court of equity. The decree simply directs that the standard duplex pump and forty horse-power boiler connected with the waterworks plant, "or other machinery of sufficient force and power to pump water into and through the main pipes leading to and from the standpipe of said waterworks system for the purpose of supplying Hubbard City with water for domestic and fire purposes, be used during the remainder of the 40 years contract with plaintiff." This decree does not require the use of the duplex pump and forty horse-power boiler at present connected with the waterworks for the entire remaining period of the contract, but allows other machinery of sufficient force and power, etc., to be used.

The decree of the court reads, in part as follows: "And said defendant shall in case of fire, as soon as possible after receiving notice thereof, give direct pressure sufficient to furnish fire protection to said Hubbard City." Appellants urge a proposition, purporting to be propounded under "the seventh assignment (evidently seventeenth) and generally under all assignments," to the effect that the term "fire protection" as used in the above excerpt from the decree of the court is too indefinite and uncertain to be enforced in equity by the ordinary process of the court. The term as here used, properly construed, simply means, that appellants shall, with the machinery contemplated by the contract and required in the enforcement of it to be used, furnish water with sufficient pressure to force the same such distance as will afford, in fighting fire, reasonable protection from its consuming flames. It is not fairly susceptible in the connection used, to the construction as contended for by appellants, namely, "that it necessarily contemplates the proper use of the water furnished by the fire department, and that such use depends upon the equipment of the fire department and the skill of the firemen." We think the language of the decree properly understood and fairly interpreted is not subject to the criticism urged, and that no serious difficulty will be experienced in its practical enforcement.

We are of the opinion that none of the assignments point out any reversible error, and the judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused.