### McCAMEY v. HOLLISTER OIL CO. et al.
(No. 9732.)

(Court of Civil Appeals of Texas. Fort Worth. March 18, 1922. Rehearing Denied April 29, 1922.)

1. Trusts ⚖️210—Beneficiary of express trust who did not create it and has no voice in its management not personally liable for debts incurred by trustee.

A beneficiary of an express trust, who took no part in its creation and who receives benefits not arising from a contract on his part and has no voice in the management of the estate by the trustee, is not personally liable for the debts incurred by the trustee.

2. Trusts ⚖️210—Beneficiary of implied, resulting, and constructive trusts not personally liable for obligations incurred by trustee.

The beneficiary of an implied trust, a resulting trust, or a constructive trust, is not personally liable for obligations incurred by the trustee.

3. Trusts ⚖️1—Separation of legal and equitable titles essential to existence of express trust.

It is essential to the creation of an express trust that the legal and equitable titles be separated and that the legal title be vested in the trustee and the equitable title in the cestui que trust.

4. Joint-stock companies ⚖️1, 15(1)—Declaration of trust held to create joint-stock company of which shareholders were individually liable for debts.

Articles of association in the form of a declaration of trust conveying legal title to assets to trustees and investing management of business in the hands of trustees, but reserving to the shareholders the power to amend the articles of association in any manner deemed expedient, held not to create a so-called Massachusetts trust, but to create a joint-stock company, the shareholders of which were individually liable as partners for debts incurred by trustees in view of Rev. St. arts. 1121–1123, 1125, 1126, 6127–6129, 6133, 6149–6154.

5. Partnership ⚖️165 — Partners cannot limit their liability except as provided in statutes relating to limited partnerships.

Except as provided in Rev. St. arts. 6127–6129, 6133, for the organization of a limited partnership, the members of a partnership cannot limit their liability in view of the rule, "Expressio unius est exclusio alterius."

6. Statutes ⚖️185—That which is implied in a statute is as much a part thereof as what is expressed.

That which is implied in a statute is as much a part of it as what is expressed.

7. Joint-stock companies ⚖️15(1) — Members of organization who invested trustees with management of business liable for debts, though organization is not a partnership nor a joint-stock company.

Members of organization doing business under a declaration of trust investing management of the business in the hands of trustees, and expressly authorizing the trustees to incur indebtedness, would be liable for debts so incurred under the rules of law applicable to the relation of principal and agent, even though neither partnership nor a joint-stock company was created by the articles.

8. Trusts ⚖️51—Express trust attempted to be created in violation of principles of equity is a nullity.

The right to create an express trust is subordinate to the fundamental principles of equity, and an express trust created in violation of such principles is a nullity.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Action by George B. McCamey against the Hollister Oil Company, Warren H. Hollister, William Hettesheimer, and Charles J. Geiser. Judgment for plaintiff against the defendant company and the individual defendants as trustees, but denying personal judgment against the individual defendants, and plaintiff appeals. Reversed and rendered in part, and undisturbed in part.

Thompson, Barwise, Wharton & Hiner and J. Arthur Collins, all of Fort Worth, for appellant.

---

⚖️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Walker & Baker, of Cleburne, and Garee, Odell & Allen and Ernest May, all of Fort Worth, for appellees.

DUNKLIN, J. George B. McCamey drilled an oil well for the Hollister Oil Company, under a contract in writing which consisted of a written proposition, dated at Fort Worth, Tex., signed by McCamey and addressed to the "Hollister Oil Company," at Fort Worth, Tex., and accepted by that company. The offer made by McCamey included his proposition to drill and certain material mentioned necessary thereto, also stating $38,500 as the price which would be charged for the work and material, and the dates for the payment of the same. Below the signature of McCamey to that proposition was the following:

"We accept the above proposition.
     "[Signed] Hollister Oil Co.
         "W. H. Hollister.
         "R. A. Barry, Mgr.
"Correction certified to
     "[Signed] Geo. B. McCamey.
         "Hollister Oil Co.,
         "By W. H. Hollister."

McCamey instituted this suit to recover the balance due him under that contract, and the recovery was sought, not only against the Hollister Oil Company, but also against Warren H. Hollister, William Hettesheimer, and Charles J. Geiser, who were likewise made parties defendants in the suit. It was alleged that the Hollister Oil Company is a joint-stock association with its principal place of business in Fort Worth, Tarrant county, Tex.; that the defendant Warren H. Hollister, who resides in Tarrant county, is its president; that William Hettesheimer likewise resides in Tarrant county, Tex., and that Charles J. Geiser is a resident citizen of New York state, but is temporarily residing in Tarrant county, Tex.; and plaintiff prayed for service of citation on all of the defendants to answer his petition. The petition contained this allegation:

"Plaintiff further alleges that the defendant Warren H. Hollister, William Hettesheimer, and Charles J. Geiser were, at the time said contract was entered into, and are now, owners of shares of stock in the said Hollister Oil Company, a joint-stock association, and that the said Warren H. Hollister, William Hettesheimer, and Charles J. Geiser are liable to plaintiff as joint principals or as with the Hollister Oil Company, partners for any breach of the contract as hereinafter set out, so entered into between plaintiff and the Hollister Oil Company."

Then follow allegations of performance of the work in compliance with the terms of the contract and allegations of liability on the part of each and all of the defendants for the balance claimed to be due thereon, with a prayer for judgment against the defendants jointly and severally for such balance; also, for judgment decreeing a mechanic's and materialman's lien in plaintiff's favor on the lease upon which the well was drilled and improvements thereon, together with a foreclosure of such lien.

The defendants jointly filed an answer, consisting of a general demurrer, special exception by Hollister, Hettesheimer, and Geiser, and a general denial by all of them. The answer also contained the following special plea:

"Further answering, if required defendants show that, if plaintiff is entitled to any relief whatsoever, it is against the defendant Hollister Oil Company, and its trustees and the assets of said company in their hands, and not against the other defendants personally; that at all times mentioned by plaintiff said Hollister Oil Company was a common-law trust, and the other defendants contracted with plaintiff in their capacity as trustees only and not as individuals or personally; that, under the declaration of trust of said Hollister Oil Company, plaintiff is required to look alone to the property and funds of said company, and not to the trustees or certificate holders for his debt, if any; and the defendants Hollister, Hettesheimer, and Geiser, specially denying plaintiff's allegations of partnership, therefore show that in no event is plaintiff entitled to recover against them."

The case was tried before the court without a jury, and judgment was rendered in plaintiff's favor against the "Hollister Oil Company, a trust estate," for the sum of $23,385.50, together with the foreclosure of the lien prayed for in plaintiff's petition on defendants' leasehold interest in the land upon which the well was drilled, together with the machinery, supplies, and all personal property and improvements placed on the lease by the defendants. But the plaintiff was denied a recovery of personal judgment against the defendants Hollister, Hettesheimer, and Geiser for the debt for which he sued. From the judgment so rendered in favor of the individual defendants last mentioned, the plaintiff has prosecuted this appeal.

The trial was upon an agreed statement of facts, signed by counsel for all the parties, which is as follows:

"(1) It is agreed that the plaintiff, Geo. B. McCamey, performed the work and incurred the expense set forth in the exhibit to plaintiff's petition, which aggregates a debt of $23,385.50, which debt was created under and by virtue of the contract of date March 25, 1920, set forth in plaintiff's petition.

"(2) It is agreed that the debt of $23,385.50 is just, due, and unpaid, and that Geo. B. McCamey has filed and perfected a valid contractor's lien upon the oil and gas lease and all improvements thereon situated, as well as all personal property thereon located upon the tract of land described in plaintiff's petition, and upon which plaintiff has performed the services

for which the said debt of $23,385.50 was incurred.

"(3) It is agreed that there is no question as to the liability of the Hollister Oil Company, defendant in said suit, for the amount of the said debt due plaintiff; but as to the liability of the other defendants, Warren H. Hollister, William Hettesheimer, and Charles J. Geiser, personally, it is agreed as follows:

"(a) That at the time the contract of March 25, 1920, set out in plaintiff's petition, was entered into, the Hollister Oil Company was operating and doing business under the attached declaration of trust, and

"(b) The court shall construe the said declaration of trust in order to determine as a matter of law whether it creates a joint-stock association or a common-law trust, and

"(c) If the court finds that the declaration of trust constitutes a joint-stock association, then the court shall determine· whether or not under the laws of Texas the defendants Hollister, Hettesheimer, and Geiser are personally liable by reason thereof.

"(4) It is agreed that after the court shall have determined the matter of the personal liability of the defendants Hollister, Hettesheimer. and Geiser, as above set forth, the court shall proceed to render judgment for plaintiff either against all of the defendants, or against the Hollister Oil Company alone, as the court may decide the matter.

"(5) It is agreed that in determining whether or not the defendants Hollister, Hettesheimer, and Geiser are personally liable, that at the time the contract was entered into and the debt sued upon by plaintiff created, the said named defendants, except Geiser, were each officers and shareholders of the said Hollister Oil Company, and the said Geiser was a shareholder but not an officer."

The declaration of trust attached to the agreement is as follows:

"Article I.

"This trust shall be designated and known as the Hollister Oil Company, of Cleburne, Tex.

"Article II.

"The following words, terms and phrases, used herein, shall be given the meaning stated below in this article, unless such meaning would be clearly in conflict with the purposes and spirit of this instrument:

"(1) The word 'company' used in the title of this trust, and elsewhere herein, shall be regarded only a convenient term referring to the trust or to the trust estate and shall never be considered or construed as defining the kind of character of this organization or as indicating the organization created and formed by this instrument is anything other than a trust.

"(2) The terms 'certificate of stock,' 'share of stock,' and 'share,' employed herein, shall be taken to refer to a share in the beneficial interest of the property, assets, trust fund and corpus of said trust estate.

"(3) The term 'trustee' shall be taken to mean the trustees herein named, and those who are or may be trustees for the time being.

"(4) The term 'certificate holder,' 'shareholder,' and 'stockholder' shall be taken to mean the holder for the time being, according to the books of the trustees, of a share of stock issued under this trust.

"(5) The terms 'trust,' 'trust estate,' 'capital,' and 'capital stock,' shall be taken to mean the trust fund hereunder, the corpus of the estate; that is, all property, real, personal and mixed of every kind and description howsoever acquired, and wheresoever situated held under this declaration of trust by the trustees for the time being.

"Article III.

"The principal office of this trust shall be located and maintained in the city of Cleburne, in the county of Johnson, state of Texas, until changed· by the trustees. The principal office may be changed and branch offices established, maintained, changed and discontinued at such times and places as the trustees in their discretion may deem best.

"Article IV.

"The capital or capital stock of this trust, meaning the beneficial interest of the shareholders in this trust estate hereunder, shall be fixed at $300,000.00 and shall be divided into 3,000 shares of the stipulated par value of $10.00 (ten dollars) each, which shall evidence the heirs, adminstrators, and assigns in this trust estate. The capital stock of the trust estate, or any part of same, may, in the discretion of the trustees, be held in the treasury for the use and· benefit of the trust at such prices and upon such terms as the trustees may fix. From the proceeds of the sale of said stock or with the stock itself, the trustees shall pay the purchase price of the properties already purchased for the trust or such as may thereafter be purchased for same. The trustees may, from time to time, when authorized by a majority vote of stockholders, increase the capital of the trust fund, and to this end and for this purpose may issue, offer, sell and dispose of new and additional shares of stock in the trust estate in such amounts upon such terms at such prices as they may deem reasonable and proper.

"Article V.

"The purposes of this trust are to authorize and empower the trustees hereunder, as such, to organize, own, operate and conduct any business, trade, enterprise or industry of any kind, description or character whatsoever; to buy and sell property of every kind, character and description, and to do anything, and transact any business with respect to any of said matters and properties which they could lawfully do in their individual capacity as absolute owners. Without in any way limiting or curtailing the generality of the foregoing purposes and powers the trustees shall, without further authority and without any control by the share or stockholders, possess all and singular, the following special rights, powers and authority;

"(1) They shall, as far as convenient and practicable, take and hold the title, both legal and equitable, to all property, however acquired under the terms hereof in the name of the Hollister Oil Company of Cleburne, Tex., and said property shall be held by the trustees jointly as joint tenants at common law and not as tenants in common, in trust according to the terms hereof. All conveyances of every kind

and description, at any time made to or in the name of the trustees of Hollister Oil Company of Cleburne, Tex., shall be held to vest the title to the property so conveyed in the trustees as such under this instrument, the title Hollister Oil Company, being merely intended as a convenient designation of the trustees hereunder.

"(2) They shall administer and dispose of all properties for the benefit of the holders of all shares of stock issued hereunder in proportion to their respective interests, as represented by said shares of stock.

"(3) They shall have the absolute management, control and disposition of all the trust estate and its business and affairs, of every kind and character.

"(4) They shall, in such capacity, exclusively and absolutely, and without let or hindrance from the certificate holders or stockholders have as full absolute and plenary rights, authority, power and discretion as if absolute owners to establish, form, organize, manage and conduct any business, trade, enterprise or industry of any kind, character or description whatsoever; to acquire by purchase, exchange or otherwise, and to hold, own, develop and operate and to sell, pledge, exchange, mortgage and convey or otherwise dispose of property of every kind, character and description, real, personal and mixed.

"(5) They shall have the absolute and uncontrolled right, power and authority to institute, maintain and defend actions, suits and proceedings in any court of law or equity either in the name of said trust or in their names as trustees thereof; to sell, transfer, assign and convey the whole or any part of the trust estate, invest and reinvest the proceeds thereof at any time in such manner and on such terms and for such consideration as they in their absolute and uncontrollable discretion may deem best; to collect any money, and pledge the assets of the trust as security therefor; to improve, repair and develop any property belonging to the trust estate in any manner they shall deem proper; to insure the lives of any persons for the benefit of this trust; to execute and deliver in the manner herein provided all deeds, leases, mortgages, powers of attorney and other instruments in writing which they may deem necessary and proper in the exercise of the powers conferred hereunder; to purchase, hold, mortgage, pledge, exchange, sell, convey, and deal in real estate, stocks, bonds, securities of every kind and description, property, rights, privileges and franchises of every kind and character, in such cases and for such consideration and upon such terms and conditions as they may deem right and proper; to deal in, own, produce, store, transport, refine and market petroleum and its products, oil, gas, gasoline and all by-products thereof; to prospect for, mine and develop, oil, gas and all other minerals; and to own and hold lands, leases, rights, franchises and other properties for all purposes; to own, construct and operate oil and gasoline refineries, casing-head and treating gas and gasoline plants, carbon plants, sales offices, warehouses, docks, ships, tanks, cars and all vehicles by them deemed necessary or convenient in the conduct of any business herein mentioned; to buy, sell and furnish gas or electricity for light, heat, power and any other purposes, and to obtain, hold and own franchises for all purposes, and to own, construct and operate any manufacturing or industrial plant, business or enterprise of any kind or character whatsoever, either in connection with any of the business herein enumerated or otherwise; and finally, to do any act or thing of any kind or character, which in their judgment or discretion may be necessary, proper or expedient, in carrying into effect the purposes of this trust or any purpose specified in the declaration of trust, or in any amendments hereto, duly made and adopted.

"Article VI.

"Neither the trustees, nor any of them, nor any of their officers, agents, employees, agents or servants shall have any right, power or authority, under any circumstances, or in any event to act as the agent of the certificate holders or any of them, or to bind them personally; or to impose any liability or obligation upon any of them in any way whatsoever with respect to this trust estate or otherwise; and all persons contracting with the trustees or their officers, agents or employees, shall look only to the trust fund for the payment of any damage, claim, judgment or decree, or of any money that may become due or payable in any way to them whether founded upon contract or tort; and neither the trustees nor the certificate or stockholders, present or future, nor any of them shall as such be personally liable therefor, or on any agreement or contract made by the trustees, or by any one of them or by any of their officers, agents or employees, or for any tort in the prosecution of any business by the trustees, their officers or agents, or employees in connection with the trust estate. No amendment shall ever be made to this declaration of trust, increasing or enlarging the liability of either the trustees or the shareholders hereunder as herein stipulated.

"Article VII.

"No trustee shall be liable hereunder in any event or under any circumstances, for the acts or omissions of any other trustees or of any officer, agent or employee, or any other person whatsoever, whether employed by such trustee or not, or for any act or thing whatsoever, other than his own personal breach of trust. Each trustee shall be indemnified by, and receive reimbursement for the trust estate against and from any and all personal liability, claim, damage and loss by him incurred or suffered in the administration of the trust estate, or in the conduct of any business provided for hereunder, except such as may arise from his own personal and willful breach of trust; but all such indemnification and reimbursement shall be limited to the trust estate alone, and under no circumstances and in no event, shall the shareholders or any of them be subjected to any personal liability by virtue thereof, or of any provision of this instrument.

"Article VIII.

"No certificate or stockholder shall have any title, legal or equitable, to the trust estate, real or personal, held from time to time, by the trustees, or to any part thereof, or any right or voice in the management or control of the property, affairs or business of the trust, each share or stockholder's interest being only such as is defined in this instrument. No

shareholder shall have the right to call for or demand or secure any partition or accounting during the continuance of this trust. The shares hereunder shall be personal property, carrying only the right to a beneficial interest in the trust fund, in proportion to the shares held. The trust shall not be dissolved, nor its business affected by the death, insolvency or incapacity of one or more of the certificate holders or one or more of the trustees, nor shall such death, insolvency or incapacity entitle the legal representatives or heirs or assigns, voluntary holder or trustee to any accounting or to any action at law or in equity or otherwise, against the certificate holders or trustees, or against the trust estate, or any part thereof, but such legal representatives, heirs or assigns voluntary holder or trustee to any accounting or to any action at law or in equity or otherwise against the certificate holders or trustees, or against the trust estate, or any part thereof, but such legal representatives, heirs or assigns shall succeed to the rights of the deceased, insolvent or incapacitated certificate holder, subject to this declaration of trust and any amendments hereto, and shall succeed to nothing more.

## "Article IX.

"It is expressly declared that a trust, and not a partnership is created and established by this instrument and that the stockholders are cestuis que trustent and hold no other relations to the trustees other than those cestuis que trustent with only such rights as are conferred upon them as such cestuis que trustent hereunder. Neither the trustees nor the stockholders nor any of them shall ever be deemed in any way whatsoever to be liable or responsible hereunder as partners or otherwise.

## "Article X.

"No assessment or other personal liability or obligation shall under any circumstances or in any event, be made or imposed upon the shareholders as such, or upon any of them.

## "Article XI.

"The trustees shall as far as practicable, make reference to this instrument in every written contract or undertaking that shall be entered into in the name of the trustees or in behalf of, or relating to the business, affairs or property of this trust.

## "Article XII.

"In no event and under no circumstances shall any one dealing with the trustees or any of them, be obligated either in law or in equity to see to the application of any funds or properties passing into the hands of the trustees since the creators and settlers of this trust do not intend that purchasers of trust property, or any other parties dealing with the trustees, shall see that the purchase money is applied to the purposes of the trust.

## "Article XIII.

"The trustees may from time to time declare and pay such dividends from the earnings of the trust estate as they may deem wise and proper.

## "Article XIV.

"Certificates of interest shall be signed by the president and countersigned by the secretary-treasurer, and the shares shall be transferable only on the books of the company, and the certificate shall so provide, and further that they are in all things subject to the declaration of trust, by-laws and such amendments as may be made thereto. Shareholders whose certificates stand in their names on the books, shall alone be entitled to receive dividends and have the other rights of owners. And shareholder, may, at any time, sell, transfer, or otherwise dispose of his shares, or any of them, as heretofore provided, but each owner or holder of a share or certificate of this company shall be held by the fact of his ownership, acceptance, possession or claim thereto, to have assented to the declaration of trust, the by-laws and any amendments which may be made thereto, and to all acts performed by the association or its duly authorized officers or agents in pursuance thereof. The person in whose name a certificate stands upon the books of this trust shall be conclusively considered by the trustees to be absolute owner of such certificate and of the rights and interests evidenced thereby, and the trustees shall not be affected by any notice to the contrary, either actual or constructive, and it shall not be the duty of the trustees, upon transferring such certification or paying dividends on the same or distributing assets upon liquidation of the trust estate or at any time, to inquire in any way into the relations of assignor and assignee, pledgor and pledgee, trustee and cestuis que trustent, guardian and ward, or into any other similar relation with respect to the said certificate, or any right or interest therein.

## "Article XV.

"Unless earlier terminated, as hereinafter provided, this trust shall continue for a term of twenty-one years after the death of the last survivor of the persons whose names are hereto subscribed as trustees. The trustees, may in their uncontrollable discretion, terminate this trust at any time by a motion or resolution to that effect duly passed, at any regular meeting of the board of trustees, at which at least three-fourths of the trustees are present in person, by a vote of three-fourths of the trustees for the time being; provided, however, that any termination of the trust shall not impair or have any effect whatever upon the contracts, obligations, and liabilities of said trust estate existing or outstanding at the time of such termination. The trustees may at any time it seems to them judicious so to do in like manner and by the same three-fourths vote, alter or amend this declaration of trust except as herein prohibited, or transfer and convey the trust fund and the entire trust estate or any part thereof to new or other trustees or to a corporation, or to an individual, or to any known organization. In the event any such action as provided for in this article shall be taken by the trustees, the resolutions or instruments setting forth such action duly signed by the president or by one of the vice presidents and attested by the secretary with the official seal or a copy thereof, duly certified by the secretary, shall be recorded whenever and wherever the trustees may direct. At the expiration or upon the termination of the trust, the trustees shall proceed to wind up its affairs, liquidate its assets and distribute and apportion the same among the sharehold-

ers according to their respective interests therein, and for these purposes the then trustees shall continue to act until such duties have been fully performed.

## "Article XVI.

"(1) The trustees hereunder, for the time being, shall consist of not less than three and not more than twenty-five in number of persons, holding one or more certificates or shares of stock in this trust. The number of trustees may be increased from time to time in the discretion of the trustees.

"(2) The trustees shall annually elect from among their number a president, one or more vice presidents, a treasurer, a secretary and such other officers as the affairs of the trust estate may in their judgment from time to time require and shall fix the amount of their salaries and compensation. These officers shall have such authority and perform such duties as may be defined by the trustees.

"(3) The trustees shall have authority to appoint and employ such agents, attorneys and employés as they may deem wise and expedient, and shall fix the amount of their compensation.

"(4) Any trustee hereunder may acquire, own and dispose of shares of stock in this trust in the same manner and to the same extent as if he were not a trustee.

"(5) The signers hereóf shall constitute the trustees of the trust estate, and vacancies in the board of trustees may be filled by the remaining members of the board.

## "Article XVII.

"(1) Regular shareholders' meetings shall be held annually on the 1st day of July of each year at Cleburne, Texas, and in the event the 1st day of July falls on Sunday, then the following day.

"(2) The presence of shareholders holding one-half of the outstanding shares of the company either in person or by proxy, shall constitute a quorum for the transaction of business.

"(3) Each share entitles the holder to one vote, and if he owns more than one share in the company he shall have one vote for each share that he owns in his own name.

"(4) Any shareholder may give his proxy to any other shareholder to vote for him at any shareholders' meeting, but same must be filed with the secretary at least five days before the day of the meeting.

"(5) This declaration of trust may be altered or amended at a regular annual meeting of the shareholders or at a special meeting called for that purpose, and same may be altered or amended by a majority of the shareholders present at such meeting."

The trial judge filed his conclusions of law upon which his judgment was based, and which are as follows:

"1. I construe the declaration of trust under which the Hollister Oil Company was operating and doing business to have created and constituted a common-law trust of the type generally known as a 'Massachusetts Trust.'

"2. I find that the declaration of trust under which the Hollister Oil Company was operating did not constitute a joint-stock association; and therefore I further find that

neither the trustees nor the shareholders of the Hollister Oil Company were personally liable for the debts and contracts of the Hollister Company.

"3. I find that plaintiff is entitled to recover of the Hollister Oil Company the sum of $23,385.50, but I further find that plaintiff is not entitled to recover anything from W. H. Hollister and William Hettesheimer and Charles J. Geiser as shareholders of said Hollister Oil Company.

"4. I further find that the plaintiff, George B. McCamey, is entitled to a judgment foreclosing his contractor's lien which he filed and perfected against the property of the Hollister Oil Company, which lien is fully set out in plaintiff's petition."

The trial was upon the theory and assumption that the Hollister Oil Company was not incorporated under the laws of this state, and also upon the assumption that the plaintiff, McCamey, in entering into the contract was not chargeable with notice that the company was doing business under a declaration of trust of the character set out above; and, since the case has been briefed here upon the same assumption, we shall consider it upon the theory that the facts so assumed are true. Penn v. Brisco County (Tex. Civ. App.) 162 S. W. 916; 3 C. J. pp. 735, 838.

Appellant in his brief presents these three propositions as the basis for his contention that the judgment should have been rendered in his favor against the defendants Hollister, Hettesheimer, and Geiser individually, as well as against the Hollister Oil Company:

"(1) The declaration of trust under which the Hollister Oil Company was organized, certain articles of which conferred on the members or shareholders thereof powers of control over the officers or trustees of the Hollister Oil Company, created a joint-stock association; and the court erred in failing and refusing to so hold.

"(2) The appellees Hollister, Hettesheimer, and Geiser, who were members and shareholders of the Hollister Oil Company, which was a joint-stock association under and by virtue of certain provisions of its declaration of trust, were personally liable for the debt due appellant by the Hollister Oil Company; and the court erred in not so holding.

"(3) Granting that the court did not err in holding that the declaration of trust creating the Hollister Oil Company constituted a common-law trust of the type generally known as a 'Massachusetts trust,' yet the court erred in failing and refusing to render judgment for appellant against Hollister and Hettesheimer, who the undisputed evidence showed were trustees and who the undisputed evidence showed had not expressly exempted themselves from personal liability in their contract with appellant."

The plan of transacting commercial, trading, and almost every other character of business for profit, under articles of trust of the general type of that set out above, was first

adopted and put in use in America in the state of Massachusetts, and by reason of that fact such associations are usually denominated "Massachusetts Trusts," although sometimes also called "business trusts," "common-law trusts," "voluntary associations," etc. The business planned and transacted under the declaration of trust in the present suit was designed and intended solely for profit to the shareholders in the association to the same extent as if the same business had been carried on under a copartnership agreement or a contract which would constitute the association a joint-stock company under the common law. The chief purpose of the selection of that form of contract as a basis for the transaction of business was to avoid personal liability of the shareholders for the legal obligations which may be incurred by the association in the transaction of the business proposed, and for which obligations such beneficiaries would be personally liable if the same business is transacted under a partnership or joint-stock agreement. Other advantages to the shareholders in an association of persons doing business under such a plan are thus stated by Mr. Sears, in his work on Trust Estates as Business Companies, (page 17):

"(1) The doing of business upon the common-law right of contract with freedom from all statutory actions that may be imposed upon corporations both foreign and domestic, as merely artificial persons.

"(2) The right of trustees to apply to courts for direction in the execution of their powers, and thus their acts be given legal certainty in advance of their commission.

"(3) The protection of cestuis que trust, in their dealings with trustees, their right to accountings and full information, without the right, however, of securing information for improper purposes.

"(4) The protection of creditors in 'following' the 'trust funds,' and their right against trustees individually in cases of fraud.

"(5) The freedom with which the terms of a trust instrument may be framed for the conduct of a particular business and according to the lawful preference of its equitable owners.

"(6) Latitude in amendment of provisions of management, as experience may show is desirable.

"(7) The winding up of a business expeditiously and without resort to proceedings at law, with their consequent burden of delay and expense, under express provisions of the trust instrument, upon any termination of the trust."

The rules of equity jurisprudence applicable to trust estates generally constitute the foundation stone upon which the plan of operation of such an association is founded. By embodying in the articles of association stipulations that the legal title to all assets belonging to the association, or which may be acquired by it in the future, shall be vested in the trustees named with full power to dispose and deal with them at will and to carry on the business planned, all free of control or interference by the shareholders, it is sought to make such trustees a legal entity and an independent party to the contract, separate and distinct from the body of shareholders as another party, and thus to avoid the legal relation of principal and agent between those two parties, and also to avoid any warranted inference of a copartnership or joint-stock relation. Originally, three parties were necessary to the creation of an express trust, as evidenced by a definition quoted by Mr. Perry, in his work on Trusts (volume 1, § 2), from Starr's Institutions of the Laws of Scotland, as follows:

"A trust is in the nature of a deposition by which a proprietor transfers to another the property of the subject intrusted, not that it should remain with him, but that it should be applied to certain uses for the behoof of a third party."

[1, 2] That definition applies to a testamentary trust. However, the definition adopted by the author is sufficiently comprehensive to embrace all manner of trusts, including not only express trusts but also implied trusts resulting trusts and constructive trusts, which seem to have been created by courts of equity after the doctrine of express trust had first obtained. The author defines a "trust" as "an obligation upon a person arising out of a confidence reposed in him to apply property faithfully and according to such confidence." And in section 24 the author states that implied, resulting, and constructive trusts are predicated upon a judicial presumption arising out of the language of an instrument or transaction of the parties or some fiduciary relation between them that a trust was intended by them. Id. §§ 25, 26, and 27. When there are three parties to an express trust, for example a testamentary trust, the cestui que trust takes no part in its creation, and the benefits he receives do not arise from a contract on his part, nor does he have any voice in the management of the estate by the trustee. Under such conditions, it is clear that he cannot be held liable personally for debts incurred by the trustee. For a like reason the beneficiary of an implied trust, a resulting trust, or a constructive trust, is not personally liable for obligations incurred by the trustee.

[3] It is essential to the creation of an express trust that the legal and equitable titles be separated, and that the legal title be vested in the trustee and the equitable title in the cestui que trust; and the authorities all agree that, when both of these titles unite in the same person, the trust terminates. It is also true that the settlor in such a trust ordinarily cannot be a trustee also, although under some circumstances he may occupy the dual relation of settlor and beneficiary or cestui que trust.

In 20 R. C. L. p. 800, the following is said:

"The difficulty of formulating a definition of a partnership, at once accurate, comprehensive and exclusive, is said to be insuperable. While a partnership has been defined as a combination by two or more persons of capital, or labor, or skill, for the purpose of business for their common benefit, and, in similarly brief terms, it has been said that a partnership is an association with certain incidents recognized by law for the convenient transaction of legitimate trade and business, yet it has also been said that the most precise and comprehensive definition is that of Chancellor Kent. This learned jurist defined a partnership as a contract of two or more competent persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business; and to divide the profit and bear the loss in certain proportions, which definition has been may times quoted with approval. In harmony with this definition the Supreme Court of the United States has held that those persons are partners who contribute either property or money to carry on a joint business for their common benefit, and who own and share the profits thereof in certain proportions."

In 2 Cook on Corporations, § 504, an "unincorporated joint-stock company" is defined as—

"An association of persons for the purposes of business, having a capital stock divided into shares and governed by articles of association which prescribe its objects, organization and procedure, and the rights and liabilities of members, except that the articles cannot release the members of their liability as partners to the creditors of the company."

In section 506, it is said that the status of a joint company may arise by implication of law in case of an unsuccessful attempt to form a legal corporation, or by continuance of the business of a corporation after its charter has expired. In section 508, it is said that the liability of stockholders in such a company to its creditors is the same as that of partners. In 17 Am. & Eng. Ency. of Law, p. 636, the following definition is given:

"A joint-stock company is an association of individuals for purposes of profit, possessing a common capital which is divided into shares, of which each member possesses one or more, and which are transferable by the owner. These associations formed for business purposes were at common law, and as a general rule still are, considered merely as partnerships and their rights and liabilities are in the main governed by the same rules and principles which regulate commercial partnerships."

In Industrial Lumber Co. v. Texas Pine Land Ass'n, 31 Tex. Civ. App. 375, 72 S. W. 875, the court, in speaking of a voluntary unincorporated stock company, used this language:

"Such concerns are uniformly held in the United States to be partnerships, subject to be sued as such, and governed by the laws fixing partnership responsibility. 22 Ency. Law (2d Ed.) p. 637; Cook on Stock and Stockholders, vol. 1, § 508; Thompson on Corp. vol. 1, § 14, p. 16. They are distinguishable from 'partnerships,' as that term is ordinarily used, only in the respect that the death or withdrawal of one or more members does not effect a dissolution, and that the stock can be bought and sold without affecting the integrity of the concern. In these respects they partake of the nature of corporations, but these peculiar characteristics do not affect the nature or extent of the individual liability as to third parties. The agreement among members, or between themselves and the trustees appointed to manage the affairs of the concern, that no personal liability should rest upon the members, would not have the purposed effect, any more than such an agreement between the members of an ordinary partnership would accomplish that end. A. & E. Ency. Law, vol. 22, pp. 143–173."

The difficulty incident to formulating a plan of doing the ordinary commercial or trading business by means of a declaration of trust, of the Massachusetts type, for the sole purpose of profit to shareholders and at the same time escape the statutory restrictions, regulations, and burdens applicable to private corporations and also the liability of shareholders for the debts contracted by trustees for the benefit of the association, has given rise to much fine reasoning and many technical discriminations. The decisions of the Supreme Court of Massachusetts relative to such companies have been followed with approval in a majority of the states in which that plan of business has been recognized as valid and effective for the purposes intended. We shall not undertake a lengthy discussion of those decisions, or of the decisions of other states which have followed them. In the case of Frost v. Thompson, 219 Mass. 360, 106 N. E. 1009, it was said that the test for determining whether a declaration of trust of the character now under discussion creates a trust or a partnership "depends upon the way in which the trustees are to conduct the affairs committed to their charge. If they act as principals and are free from the control of the certificate holders, a trust is created, but if they are subject to the control of the certificate holders, it is a partnership." That test seems to have been recognized as a correct test in all of the decisions of that state and also by the decisions of other states following them. In that case the association was held to be a partnership because the shareholders were given power to remove the trustees at any time, to fill vacancies, to terminate the trust at will, and to amend the declaration of trust. In the case of Williams v. Inhabitants of Milton, 215 Mass. 1, 102 N. E. 355, which is one of the leading cases of that state and in which the former decisions of the same court are discussed and reviewed at length, the instrument under discussion was held to create a trust and not a partnership; the basis for such holding being stated as follows:

"The certificate holders are throughout called 'cestuis que trustent.' The certificate holders, or 'cestuis que trustent,' are in no way associated together, nor is there any provision in the indenture of trust for any meeting to be held by them. The only act which (under the trust indenture) they can do is to consent to an alteration or amendment of the trust created by the indenture or to a termination of it before the time fixed in the deed. But they cannot force the trustees to make such alteration, amendment or termination. It is for the trustees to decide whether they will do any one of these things. All that the certificate holders or 'cestuis que trustent' can do is to give or withhold their consent to the trustees taking such action. And the giving or withholding of consent by the cestuis que trustent is not to be had in a meeting, but is to be given by them individually."

In Dana v. Treasurer and Receiver General, 227 Mass. 562, 116 N. E. 941, it was held that a declaration of trust providing for meeting of stockholders with power at such meetings to elect trustees and to alter or amend the declaration of trust created a partnership. See, also, Priestley v. Treasurer and Receiver General, 230 Mass. 452, 120 N. E. 100, in which it was held that the agreement constituted a partnership by reason of the fact that the stockholders could hold annual meetings at which time they could remove the trustees and elect others in their place and the trustees could make no sale of the real estate unless authorized so to do by the shareholders.

In Fletcher's Cyclopedia Corporations, c. 66, beginning on page 10458, is an extended discussion of the subject of trusts and kindred associations and of the decisions of the Supreme Court of Massachusetts and courts of other states, and on page 10468 the following is said:

"Under the Massachusetts rule, the character of the association is to be determined from the provisions of the trust deed or declaration and the powers which it confers upon the certificate holders, rather than by the extent to which those powers are executed. What the parties actually did in making the trust indenture is decisive in determining whether there is a trust or a partnership, rather than a statement therein as to what they intended to do, although such a statement may be considered in determining what they did when that is doubtful."

We shall not undertake a further review of those decisions. In many of them the trust agreements were held to constitute partnerships, while others were held to constitute trusts. The powers given to the trustees in the different instruments vary, and no two instruments were drawn in the same language. See, also, Simson v. Klipstein (D. C.) 262 Fed. 823; In re Associated Trust (D. C.) 222 Fed. 1012; Baker-McGrew v. Union Seed Fertilizer Co., 125 Ark. 146, 188 S. W. 571.

In the case of Crocker v. Malley, 249 U. S. 223, 39 Sup. Ct. 270, 63 L. Ed. 573, 2 A. L. R. 1601, the issue was whether or not an association which was organized as a Massachusetts trust in that state was liable to the federal government for the tax imposed by an act of Congress upon the income of "every corporation, joint-stock company or association, * * * no matter how created or organized." The decision of the Supreme Court was in favor of the association. The decisions of the Supreme Court of Massachusetts were discussed and cited as authorities to support the conclusion reached, which was, in effect, that since, by the terms of the instrument under which the association was formed, title to all the assets was vested in the trustees together with the exclusive right to transact the business contemplated, all free of control or interference by the shareholders, it could not be said that the association itself was engaged in the transaction of the business, and therefore it was not liable for the income tax. In that case no rights of creditors were involved; the only question being one of construction of a tax statute. The rule everywhere is that taxes on real property are assessed against the one who holds the legal title thereto. 26 R. C. L. 358. And when personal property is held in trust the taxes thereon are assessed against the trustee and not against the cestui que trust. 26 R. C. L. p. 294. With the legal title to all the assets, including earnings, vested in the trustees, who likewise in their own names transacted all the business, it is difficult to perceive how a different conclusion could have been reached by the court in that case, even in the absence of the Massachusetts decisions which were cited as supporting authorities. Hence we do not believe that that decision is applicable in this suit.

[4] As will be seen from a reading of the declaration of trust in the present suit, all the title to assets and all the powers of control over them and all power and authority to transact the business in hand are conferred solely by the terms of that instrument. Those powers were delegated by the owners of the beneficial interests in the trust, who by subdivision 6 of article XVII, of the trust agreement reserved the power to alter or amend the articles of association in any manner they might deem expedient. That contractual right to alter or amend, to which the trustees assented, unquestionably included the power to limit and restrict the control of the trustees over the assets and the conduct of the business to any extent that reasonably may be supposed, even though the legal title be permitted to remain in the trustees. And, as said in some of the decisions, the articles of association must be looked to to determine the question of power of the shareholders to control the action of

the trustees, even though the power is never exercised. Accordingly even if the test announced by the Massachusetts decisions, namely, the right of the trustees to full control, be accepted as the correct criterion for the determination of the issues presented in the present suit, we think it clear that the articles of association in controversy in this suit did not create a trust, but did create a joint-stock company, and that defendants Hollister, Hettesheimer, and Geiser by reason of being shareholders in the association are individually liable as partners to plaintiff for the debt sued for, and that judgment should have been rendered against them therefor.

Several chapters of title 25 of our Revised Statutes are devoted to the formation and regulation of private corporations in this state. Article 1121 contains a statement of the purposes for which a corporation may be formed. Articles 1122 and 1123 provide what shall be shown in the charter and how it shall be executed. Article 1125 requires that all of the proposed capital stock of all corporations created for profit shall be subscribed in good faith and 50 per cent. of it paid in before a charter shall issue, and article 1126 requires that satisfactory proof be furnished to the Secretary of State that such has been done. By other articles provision is made for suit against a stockholder for any unpaid balance of his subscription for stock which is the limit of his liability for the debts of the corporation. Provision is also made for the payment of charter fees, franchise taxes, for an inspection of the books of the corporation by the Attorney General in order to determine whether the laws of the state applicable thereto are being complied with, and there are many other regulatory provisions not necessary to be mentioned. Those provisions are for the protection of the public, against imposition, in various ways, such as the purchase of watered stock with little or nothing as a basis for its value, and the extension of credit upon the faith of a large capitalization with supposedly large assets as the proceeds of sale of stock.

Chapter 1 of title 102 of the Revised Statutes of this state provides for the formation of limited partnerships. Following are some of the articles of that chapter:

"Art. 6127. Such partnerships may consist of one or more persons, who shall be called the general partners, and who shall be jointly and severally responsible as general partners now are by law; and of one or more persons who shall contribute in actual cash payments a specific sum as capital to the common stock, who shall be called special partners, and who shall not be liable for debts of the partnership beyond the fund so contributed by him or them to the capital.

"Art. 6128. The general partners only shall be authorized to transact business and sign for the partnership and to bind the same.

"Art. 6129. The persons desirous of forming such partnership shall make and severally sign a certificate, which shall contain:

"(1) The name or firm under which the partnership is to be conducted.

"(2) The general nature of the business intended to be transacted.

"(3) The names of all the general and special partners interested therein, distinguishing which are general and which are special partners, and their respective places of residence.

"(4) The amount of capital which each special partner shall have contributed to the common stock.

"(5) The period at which the partnership is to commence, and the period at which it is to terminate."

By other articles it is provided that the certificate of partnership shall be duly executed and acknowledged and recorded in the office of the county clerk of the county in which the business is to be transacted, together with an affidavit of at least one of the general partners stating that the sums specified in the certificate have been actually paid in cash. Article 6133 is as follows:

"No such partnership shall be deemed to have been formed until a certificate shall have been made, acknowledged, filed and recorded, nor until an affidavit shall have been filed as above directed; and, if any false statement be made in such certificate or affidavit, all the persons interested in such partnership shall be liable for all the engagments thereof as general partners."

Another article provides that the terms of the partnership shall be published in some newspaper. The plain purpose of those statutes was to protect the public dealing with the firm from loss resulting from extending credit upon the belief that all the members of the firm are personally liable for its debt.

The following are articles of chapter 2, tit. 102, of the Revised Statutes of this state:

"Art. 6149. Hereafter any unincorporated joint-stock company or association, whether foreign or domestic, doing business in this state, may sue or be sued in any court of this state having jurisdiction of the subject-matter in its company or distinguishing name; and it shall not be necessary to make the individual stockholders or members thereof parties to the suit.

"Art. 6150. In suits against such companies or associations, service of citation may be had on the president, secretary, treasurer or general agent of such unincorporated companies.

"Art. 6151. In suits by or against such unincorporated companies, whatever judgment shall be rendered shall be as conclusive on the individual stockholders and members thereof as if they were individually parties to such suits.

"Art. 6152. Where suit shall be brought against such company or association, and the only service had shall be upon the president, secretary, treasurer or general agent of such company or association, and judgment shall be

rendered against the defendant company, such judgment shall be binding on the joint property of all the stockholders or members thereof, and may be enforced by execution against the joint property; but such judgment shall not be binding on the individual property of the stockholders or members, nor authorize execution against it.

Art. 6153. In a suit against such company or association, in addition to service on the president, secretary, treasurer or general agent of such companies or ;associations, service of citation may also be had on any and all of the stockholders or members of such companies or associations; and, in the event judgment shall be against such unincorporated company or association, it shall be equally binding upon the individual property of the stockholders or members so served, and executions may issue against the property of the individual stockholders or members, as well as against the joint property; but executions shall not issue against the individual property of the stockholders or members until execution against the joint property has been returned without satisfaction.

"Art. 6154. The provisions of this chapter shall not affect nor impair the right allowed unincorporated joint stock companies and associations to sue in the individual names of the stockholders or members, nor the right of any person to sue the individual stockholders or members; but the provisions of this chapter shall be construed as cumulative merely of other remedies now existing under the law."

[5, 6] The statutes relating to corporations and limited partnerships are the only statutes in this state which provide for and allow a limitation of the individual liability of the members of any association of persons formed to transact business for profit for the debts legally incurred by the association. Under the rule, "Expressio unius est exclusio alterius," the statutes relating to limited partnerships imply a denial of the right of members of a partnership to limit their liability, under the common law in any other manner, since "that which is implied in a statute is as much a part of it as what is expressed." Sutherland on Statutory Construction, § 334; 25 R. C. L. § 229, pp. 982, 983; 36 Cyc. 1122, 1145. And the statutes referred to upon the subjects of Corporations, Limited Partnerships, and Unincorporated Joint-Stock Companies or Associations, all considered together reflect the public policy of this state and indicate a legislative intention to include unincorporated joint-stock companies of every character which are organized for profit within the class of those mentioned in the statutes.

The articles of association of the Hollister Oil Company come strictly within the definitions of "joint-stock company," quoted above. The fact that the plan adopted to appoint trustees clothed with the powers and title specified as a convenient means for the accomplishment of the purpose for which the organization was formed, namely, profit to the shareholders, did not make the association any the less a joint-stock company. Hence we are of the opinion that the appellees were liable for the debt in controversy, under and by virtue of those statutes relating to unincorporated joint-stock companies or associations. Wells v. Mackay Telegraph-Cable Co., decided by the Court of Civil Appeals of the First Supreme Judicial District December 17, 1921, not yet [officially] published, 239 S. W. 1001, and other decisions there cited.

[7, 8] If for any possible reason it can be said that neither a partnership nor a joint-stock company was created by the articles of the association in controversy, nevertheless the shareholders are liable for the debt sued for under the rules of law applicable to the relation of principal and agent. A partnership or joint-stock company could have been organized for the purpose of transacting the same business that was transacted under the declaration of trust. Manifestly, it would be unjust to visit upon the plaintiff the loss of labor and material furnished by him as a creditor for the benefit of the shareholders in that association, when the debt was contracted for their benefit by persons called trustees and clothed with express authority from the shareholders to incur it; and the injustice of such a result is the basic principle of individual obligation imposed by law upon each member of a partnership or joint-stock company to answer for all the debts of the firm or company. To allow the accomplishment of such an injustice through a resort to the rules of equity by the substitution of a trust agreement for a partnership or joint-stock agreement would be to violate the most vital, fundamental principle of the whole doctrine of equity jurisprudence. The right to create an express trust is subordinate to those fundamental principles, and, if an attempt be made to create an express trust which is obnoxious to those principles, the same must fail, and the relation of partnership, joint-stock company, or principal and agent necessarily arises under the rules of the common law. Such, in effect, was the decision of our Supreme Court in the case of Sergeant v. Goldsmith, 110 Tex. 482, 221 S. W. 259, 10 A. L. R. 742, in an opinion by Chief Justice Phillips. And this vice in the declaration of trust in controversy is a further reason why it should be held to create a partnership or a joint-stock company rendering the shareholders liable as partners, if it is otherwise susceptible of that construction, and that, too, in the absence of the statutes relating to unincorporated joint-stock companies. Equity is more just than the law. 1 Pom. Eq. Jur. § 67. In order to reach the ends of justice, it often relieves against the hardships of the rigorous rules of law; but it can never be used as instrumentality to work an injustice. In this connection attention is called to the terms of the declaration of

trust of the Hollister Oil Company in which the nonliability of shareholders is stressed with great emphasis, notwithstanding general and sweeping authority is conferred upon the trustees to contract every character of indebtedness for their benefit, and containing every element of agency on the part of the trustees to bind the shareholders for the debts created, with the exception of the use of the word "trustees" instead of the word "agents," or language creating such agency. There is no magic in the word "trustees" which necessarily excludes the idea of agency. Even the Massachusetts courts recognize that as true, as reflected in those decisions in which declarations of trust were held to create partnerships. "Equity looks to the intent rather than to the form," is one of the maxims of equity. 1 Pom. Eq. Jur. § 378. See, also, 1 Mechem on Agency, §§ 42, 43, and the decisions and authorities noted in support of the text.

The question of the right to exclude individual liability on the part of the shareholders by a special contract with the creditors is not involved in this case.

For the reasons indicated, the judgment of the trial court denying appellant a recovery against appellees Hollister, Hettesheimer, and Geiser is reversed, and judgment is here rendered in favor of appellant against them jointly and severally for the debt sued for; but execution shall not issue against their individual property, until execution be issued against the property of the Hollister Oil Company, and returned without satisfaction.

The judgment in appellant's favor against the Hollister Oil Company is left undisturbed.

Reversed and rendered in part; undisturbed in part.

BUCK, J. I concur in the judgment of this court as expressed in the opinion of Justice DUNKLIN, but I do not think it is necessary to hold that the policy of this state, as reflected by our statutes and the opinions of our courts, precludes the organization of a trust estate in which the shareholders are not liable for its debts. Upon this question, at this time, I express no opinion. I do think that the declaration of trust here shown does not come within the Massachusetts trust, upheld by the Supreme Court of Massachusetts, since the shareholders by a majority vote have the right to amend or alter the declaration of trust, and thus could deprive the trustees of their right to manage the affairs of the trust independent of the shareholders.

### On Motion for Rehearing.

DUNKLIN, J. In order for the court to acquire jurisdiction of the defendants who were sued as stockholders and to secure a personal judgment against them, plaintiff followed the provisions of our statutes relating to unincorporated joint-stock companies, which accorded that right without the necessity of making other stockholders parties. The provisions of article 6153, which are to the effect that such stockholders are personally liable for the debts of such a company, are but declaratory of the common-law rule of partnership liability of stockholders in a joint-stock company. Independently of those statutes, the exclusion of that liability, under and by virtue of an agreement in the form of a joint-stock company contract, was impliedly forbidden by our statutes relating to limited partnerships, pointed out in our original opinion.

The plain purpose of the statutes last referred to could not be evaded by the form of the agreement under which the association was organized.

The motion for rehearing is overruled.

BUCK, J., concurring with limitation as before.