McFADDIN et al. v. WIESS et al.
(No. 6711.)

(Court of Civil Appeals of Texas. Galveston. April 14, 1914. Rehearing Denied May 21, 1914.)

1. INJUNCTION (§ 133*)—PRELIMINARY MANDATORY INJUNCTION—ISSUANCE.

Though a court of equity has jurisdiction to grant preliminary mandatory injunctions, such writ will not ordinarily be granted until final hearing on the merits, and not then unless necessary to complete execution of the court's decree.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 302; Dec. Dig. § 133.*]

2. INJUNCTION (§ 133*)—MANDATORY INJUNCTION—ISSUANCE BEFORE TRIAL.

Where, in a suit for mandatory injunction, the only relief demanded was that a decree be entered compelling defendant F. to sign and acknowledge a certificate of complainant's election as a trustee of an unincorporated joint-stock association, and no extreme hardship to plaintiff would result from a denial of the writ, the granting of a preliminary mandatory injunction, compelling defendant to execute and acknowledge the certificate of plaintiff's elec-

tion before trial of the case on the merits, was erroneous.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 302; Dec. Dig. § 133.*]

3. JOINT-STOCK COMPANIES (§ 16*)—TRUSTEES — VACANCY — APPOINTMENT FILLING — REQUISITES.

The articles of a joint-stock company provided that, when a trustee died, there could be no election by the two surviving trustees to fill the vacancy, except as prescribed by the articles, to wit, that the remaining trustees might choose a successor by a declaration in writing to that effect, duly signed and acknowledged by them and by the trustee so chosen, which declaration, when so signed and acknowledged, should be recorded in the records of the county. Held, that a new trustee did not become qualified to act until all of the steps so specified had been taken, and that, where one of the trustees died, the agreement of the other two on plaintiff as the third trustee, and a recital of such fact in the minutes of the meeting at which he was selected, without the due signing, acknowledgment, and record of a declaration to that effect, was insufficient to constitute plaintiff a trustee.

[Ed. Note.—For other cases, see Joint-Stock Companies, Cent. Dig. § 16; Dec. Dig. § 16.*]

Appeal from District Court, Jefferson County; John M. Conley, Judge.

Suit by P. H. Wiess and others against W. P. H. McFaddin and others. From an order granting a temporary mandatory injunction, defendants appeal. Reversed and rendered.

F. J. & C. T. Duff and Minor & Minor, all of Beaumont, for appellants. Geo. C. O'Brien, Chenault O'Brien, and George Chilton, all of Beaumont, for appellees.

McMEANS, J. The McFaddin, Wiess & Kyle Land Company is a private, voluntary, unincorporated joint-stock association, with a capital stock of $800,000, divided into 8,000 shares, of which W. P. H. McFaddin owns 3,995 shares and L. W. Houk owns 5 shares, or together 50 per cent. of the total capital, and W. W. Kyle owns 2,000 shares, and P. H. Wiess claims to own 2,000 shares, which belonged to his father, V. Weiss, until his death on July 30, 1913. McFaddin, Kyle, and V. Wiess, until his death, composed the board of trustees of the land company from its formation. McFaddin is the president and general manager of the land company and has been since its formation, and Houk is the secretary and treasurer.

On February 6, 1914, P. H. Wiess and W. W. Kyle filed their petition, duly sworn to by P. H. Wiess, praying for the immediate issuance of a mandatory order requiring McFaddin "to execute and acknowledge a certificate of the election of the said P. H. Wiess, as trustee"; the plaintiffs alleging that he was eligible to membership on the board, and that he had been duly elected as a member of the board, and the defendants denying that he was eligible, or that he was ever elected as a member of the board.

Plaintiffs also prayed for the issuance of an order, in effect forbidding McFaddin to do anything touching the business of the company, and forbidding McFaddin and Houk to execute or draw any checks or drafts on the funds of the company, or to buy, sell, or transfer any notes, securities, or other personal property belonging to it.

On the same day the district judge, in chambers, on presentation to him of plaintiffs' petition, made an order setting the application down for hearing on February 10, 1914, and granted a temporary restraining order, prohibiting and restraining the defendants from in any manner selling, leasing, or otherwise disposing of property of any kind belonging to the land company, or from mortgaging or in anywise executing contracts, checks, drafts, or any other instruments affecting the liability of the company, or any of its property or assets, or from in any manner transferring or otherwise disposing of the funds of said company; the object and purpose of the order being to hold the property, etc., in statu quo until the further order of the court.

On February 20, 1914, a hearing was had on the plaintiffs' original and supplemental petitions, and the answer of the defendants, whereupon an order was entered by the court granting a temporary mandatory injunction commanding the said W. P. H. McFaddin to sign and acknowledge before a notary public, or some other officer authorized to take acknowledgments, the certificate attached to plaintiffs' petition, or one similar in nature, and deliver the same to P. H. Wiess, and also granting a temporary injunction forbidding the defendants from in any manner selling, leasing, or otherwise disposing of any property of any kind belonging to the company, and from incumbering the property with debts, and from executing contracts, notes, checks, drafts, or any other instrument affecting the liability of said company or assets, and from transferring or disposing of any of the funds of the company until otherwise ordered by the court; the object and purpose of this order being, as stated by the judge, "to hold, keep intact and in statu quo all of the property and assets of said company until the defendant W. P. H. McFaddin shall have complied with the order of this court in matters pertaining to the certificate as hereinabove provided." The certificate which McFaddin was required by the judge's order to sign and acknowledge was to the effect that said "P. H. Wiess is now the duly authorized, elected, and qualified trustee of said McFaddin, Wiess & Kyle Land Company, as made and constituted under the actions of the two remaining trustees as aforesaid."

To the ruling of the court the defendants duly excepted, gave notice of appeal, filed their supersedeas appeal bond, and within the time required by law filed in this court the transcript of the proceedings of the court below, and the case is now properly before us for review.

At the time of the formation of the McFaddin, Wiess & Kyle Land Company on June 27, 1904, a code of by-laws for the government of the company was adopted and is now in force. This code is very elaborate, consisting of 28 articles, and we give below the substance of such of the articles as we think material to the questions under consideration and essential to an understanding of the views of this court in reaching the conclusions herein expressed.

Article II provides that the association shall be governed by a board of trustees, and vests the title to all the property of the land company in the board "as joint tenants and not as tenants in common, in trust for the benefit of all the shareholders, in proportion to the number of shares held by each in this association."

Articles III and IV are as follows:

"Article III. The shareholders in said association shall have no title to the trust property, which is or may hereafter be vested in the trustees, nor any right to manage, control, alienate, dispose of, mortgage, incumber or deal with the same in any way except by and through the trustees, as hereinafter provided, nor shall any shareholder have any right at law or in equity to demand or require or enforce a partition or dissolution of the trust except as hereinafter provided; and it is hereby declared that the shares in said company shall be and remain personal property, carrying the right of a division or share in the profits of the company, only until the winding up of the company and the dissolution of the trust, at which time the shareholders shall be entitled to a division of the property and profits then in the hands of the trustees, in the proportion that they hold shares in the company at such time, as hereinafter provided.

"Article IV. The death of a shareholder during the continuance of this association shall not operate to determine the trust, nor shall it entitle the legal representatives of the deceased shareholder to an account, or to take any action in the courts, or otherwise, against the trust or the trustees; but the executors, administrators, assigns or legal representatives of the deceased shall succeed to the rights of said decedent in the trust hereby created."

Article VI provides:

"The certificates of stock shall be signed by a majority of those who are at the time trustees, and countersigned by the treasurer. They shall be transferable only on the books of the company, and shall be in form as follows:"

Then follows the form of the certificate, containing this provision:

"The shares of this association are personal property, and transferable only on the books of the company, in accordance with and subject to the by-laws of the company, and the purchaser or holder accepts the same subject to the declaration of trust and the acceptance thereof, and of the by-laws now or hereafter to be made."

After the form of the certificate is this provision:

"Shareholders whose certificates stand in their names upon the books of the company shall alone be considered within the terms of this instrument, shall alone be entitled to vote, receive dividends, or be notified as hereinafter provided, or shall have the rights of owners. A shareholder may at any time sell and trans-

fer his shares, or any of them, but each holder of a share thereunder, or of a certificate thereof, shall be held, by the fact of his acceptance of it, to have assented to this trust, and to the by-laws of the company, and to all instructions duly given in pursuance thereof."

Article IX provides that the company and the trust shall continue for the term of 50 years, and provides a method for sooner terminating the trust by the action of the owners of two-thirds of the ' outstanding shares.

Article XI is here given in full:

"Any trustee of said association may resign his trust at 'any time by declaring in writing to that effect, under his hand and seal, duly acknowledged under the statute laws of Texas, and said declaration shall be filed with the other trustees, and after it has been so filed it shall be duly recorded in the deed records of Jefferson county, Texas, and the remaining trustees may choose his successor by a declaration in writing to that effect, duly signed and acknowledged by them and by the trustee so chosen, and said declaration showing the choice of said new trustee shall· be signed and acknowledged by them and recorded in the deed records of Jefferson county, Texas, and the acceptance of the trust thereof shall be signed by the new trustee, and acknowledged by him, according to the statutory laws of the state of Texas, and be filed and recorded in the deed records of Jefferson county, Texas, which both certificates, taken together, shall be conclusive evidence of the fact that such new trustee was duly chosen. Upon the death or refusal or inability to act of any trustee to serve in such capacity, a successor in his stead shall be elected by the remaining trustees, and a certificate made, acknowledged and recorded; as hereinbefore provided, and such election and qualification of the new trustee or trustees shall be sufficient to vest all the trust, property, or estate of said company in the new board of trustees, and in like manner and with the same powers and duties as the title and ownership of said property was vested in the original board of trustees. It is expressly provided, however, that whenever the two remaining trustees, after one shall have resigned, died or refused, or become for any reason unable to act, cannot agree upon the selection of the third· trustee, then a meeting of the shareholders shall be called by the two trustees remaining, by notice as herein elsewhere provided 'for the calling of meetings of shareholders, and at such. meeting the shareholders shall choose, from the persons nominated by the two remaining trustees, the third trustee, and this may be done by vote in writing of the holders of the majority of all the outstanding stock of record casting their votes in favor of one of said nominees; and such vote and election shall be certified to by the two remaining trustees and acknowledged by them, and the certificate recorded in the deed records of Jefferson county, and thereafter such elected trustee shall be the duly elected and qualified trustee under this trust. But it is further expressly provided that in the case of a vacancy upon the board for any of the reasons named in this article, until the due selection or election of the third trustee, the two remaining trustees shall have all the powers and duties of the full board until the election of the third trustee takes place; and furthermore, should it ever happen that there are two vacancies on the board of trustees at the same time, the remaining trustee shall call a meeting of the shareholders by sending out notices, as herein provided, for other called meetings of the shareholders, and at such meeting two trustees shall be selected by the shareholders by a majority vote of all the shares outstanding, and at such time such

vote and election shall be certified to and recorded, as herein provided, for other election of trustees; and thereafter the two trustees so elected shall be deemed duly elected and qualified trustees, with all the powers and duties given to trustees under this instrument."

Article XXVII provides that:

"W. P. H. McFaddin, Valentine Wiess, and W. W. Kyle are hereby selected and appointed trustees under this instrument, and they shall hold the position or office until their successors are elected and qualified as herein provided."

V. Wiess left a will, but, for reasons not necessary to state, it was of noneffect when he died, and his property descended in the ordinary course of descent to· his widow, Mrs. Laura E. Wiess, and son, P. H. Wiess, and daughter, Mrs. Hal H. Branham. Before the filing of this suit, P. H. Wiess acquired from the other heirs of V. Wiess the shares of stock owned. by V. Wiess in the land company, but this was subsequent to the time that P. H. Wiess claims to have been elected a trustee by the other trustees, about which more will hereinafter be stated.

On November 13, 1913, McFaddin and Kyle, the surviving trustees, met and agreed upon P. H. Wiess as trustee to succeed his deceased father as a member of the board of trustees, and the record of his election was duly entered upon the minutes of the land company by the secretary, and immediately thereafter, and on the same day, the three met as a board of trustees, and business of the land company was considered and acted upon. A short time after this P. H. Wiess caused to be prepared a certificate of his election in conformity with article XI of the by-laws, above set out, and tendered the same to McFaddin and Kyle for their signatures and acknowledgment, which certificate was accompanied by proper acceptance of the trust by P. H. Wiess, with acknowledgment in due form. The certificate was duly signed and acknowledged by Kyle, but McFaddin, after some delay, refused to sign and acknowledge ·the same, and has ever since denied the authority or right of said Wiess as trustee.

At the date of selection by McFaddin and Kyle of P. H. Wiess, as trustee, the books of the association did not show P. H. Wiess to be a shareholder. At a subsequent meeting of the trustees McFaddin and Kyle, the following resolution was passed and entered upon the minutes of the association:

"Mr. McFaddin then moved that the matter of the election and ratification of P. H. Wiess as trustee be left open until some future time when it would be possible to do the same legally, since the books did not show that there was any transfer of stock to the said P. H. Wiess from the V. Wiess estate. Mr. Kyle moved that no action be taken on the same for the present, and that the matter be held up until the same could be legally done. The motion. then carried."

Afterwards, and before the filing of this suit, P. H. Wiess acquired title to all the shares of V. Wiess' estate and had his name

entered on the proper books of the association showing his ownership thereof, but McFaddin thereafter refused to sign the certificate of his election as trustee on the grounds that P. H. Wiess, at the time of his election, was not the holder of stock, as shown by the books of the company, and because his election has been set aside and the election of a new trustee postponed until some future date.

Appellant, by his third proposition under his second assignment of error, contends in effect that, if McFaddin's refusal to sign and acknowledge a certificate showing the election of P. H. Wiess, as a trustee, is a breach of duty, then it is so because of the contract constituted by the articles of association, and that such contract cannot be enforced by an interlocutory mandatory order compelling him to perform the act, but that such mandatory order, if proper at all, must follow and not precede a final judgment, wherein the rights of the parties have been duly adjudicated in a suit brought for that purpose, after due service upon the defendant, with opportunity for a trial by jury.

The purpose and only purpose of this suit was to compel the defendant McFaddin to sign and acknowledge a certificate of plaintiff's election as trustee.

[1] While it is the undoubted right of a court of equity to grant preliminary mandatory injunctions, the more general rule is that such writs will not be granted until final hearing on the merits, and not then, unless necessary to a complete execution of the decree of the court. Joyce on Inj. S. 97a. This author, in the first part of the section referred to, says:

"An applicant for a preliminary mandatory injunction, quite as much as others, is required, however, to show a clear right, and a case of necessity or extreme hardship, and it is declared that a court will seldom grant a mandatory injunction pendente lite unless the plaintiff's right is so clear that the denial of the right must be either captious or unconscionable. Therefore the mandatory injunction, which in effect anticipates the judgment or gives some of the relief which it is sought to obtain by the decree of the court, should be granted with caution and only when the necessity is great."

In 22 Cyc. 740, after defining preliminary injunctions and discussing the purpose of their issuance, it is said:

"Their object is to maintain the status quo, to maintain property in its existing condition, to prevent further or impending injury, not to determine the right itself. Therefore, where the issuance of a preliminary injunction would have the effect of granting all the relief that could be obtained by a final decree, and would practically dispose of the whole case, it will not be granted."

Further on, on page 743, it is said:

"Since an injunction mandatory in its nature generally does more than to maintain the status quo, it is generally improper to issue such an injunction prior to final hearing; and it is frequently said that such a preliminary injunction will never issue. * * * If the issuance on preliminary application of an injunction mandatory in nature will have the effect of granting to the complainant all the relief that he could obtain on final hearing, the application should be refused, except in very rare cases, and then only where the complainant's right to the relief is clear and certain."

The principles quoted from the authorities above cited have been approved by the decisions of the courts of this state. Thus in Ort v. Bowden, 148 S. W. 1145, which was an appeal from an order refusing to grant an interlocutory mandatory injunction requiring the defendants to remove certain fences inclosing a baseball park, which constituted an obstruction of certain streets upon which plaintiffs' property abutted, it was held that the effect of the writ, had it been granted, would have been, not to preserve the status, but that the whole purpose of the suit would have been accomplished by the granting of the injunction prayed for and for that reason the court properly refused to grant it before final judgment.

In Galveston & Western Railway Co. v. City of Galveston, 137 S. W. 724, which was an appeal from an interlocutory order of the district court refusing a temporary injunction upon the petition of the appellant praying for an injunction against the city of Galveston to restrain it from interfering with the appellant in laying its track along a relocation of its line of railway across certain streets and alleys of the city, this court, in an opinion by Associate Justice Reese, says:

"The effect of the writ, if granted, would have been, not to preserve the status of the property as it had theretofore existed, nor to protect the possession of appellant, nor was it to restore to appellant a possession theretofore enjoyed by it, of which it had been tortiously or fraudulently deprived, * * * but to take from the city the possession and control of a certain portion of its streets and alleys, of which it was and had been in the undisputed control, and to put appellant in possession thereof. * * * Thus the whole purpose of the suit would have been accomplished by a temporary writ of injunction, issued by the court without a trial upon the merits, upon such hearing as could be had upon bill, answer, and affidavits."

And the judgment appealed from was affirmed.

Simms v. Reisner, 134 S. W. 278, was an appeal from an order of the district court of Harris county granting a temporary injunction restraining Simms from continuing to bore for oil on certain land claimed by plaintiff. Appellant was in possession of the property. In deciding the case, Chief Justice Pleasants of this court uses this language:

"An injunction is not a remedy which can be used for the purpose of recovering title or right of possession of property, and it is not the function of a preliminary injunction to transfer the possession of land from one person to another pending an adjudication of the title, except in cases in which the possession has been forcibly or fraudulently obtained by the defendant, and the equities are such as to require the possession thus wrongfully invaded to be restored, and the original status of the property to be preserved pending the decision of the issue of title. Jeff Chaison Townsite Co. v. McFaddin, Wiess & Kyle Land Co., 56 Tex.

Civ. App. 611, 121 S. W. 716. The trial court did not order the possession of the land delivered to appellees, but he enjoined the appellant from using it for the purpose for which it was leased, and thereby rendered his possession worthless. This should not be done unless the use of the property by appellant would cause injury to appellees against which they could only be adequately protected by an injunction."

In International & Great Northern Railway Co. v. Anderson County, 150 S. W. 239, an interlocutory mandatory injunction was granted requiring the railway company, within 60 days from the date of the order, to remove its general offices from the city of Houston to the city of Palestine. In discussing the validity of this order this court, speaking through Chief Justice Pleasants, said:

" * * * As a general rule a mandatory injunction should not be ordered before a final hearing of the case and for the purpose of executing the judgment of the court. The usual purpose of a preliminary injunction is' to maintain the status quo of the subject-matter of the suit, or to prevent impending injury, and, when the issuance of such injunction would have the effect of granting all the relief that could be obtained by a final decree, it should not be granted, except in cases of extreme hardship."

It was held that no sufficient emergency was shown in that case to authorize the granting of such an injunction before final hearing. See, also, Mendelsohn v. Gordon, 156 S. W. 1151.

[2] As before stated, the only purpose of this suit was to compel the defendant McFaddin to sign and acknowledge a certificate of Wiess' election as a trustee. Thus the whole purpose of the suit was accomplished by the granting of the mandatory injunction appealed from, without a trial upon the merits and upon such a hearing only as could be had upon the petition and supplemental petition of the plaintiffs and the answer of the defendant. Under the authorities cited, this should not have been done unless it was shown that a refusal to grant the writ would result in extreme hardship to plaintiff. Certainly no extreme hardship would flow to plaintiff by a denial of the mandatory writ. McFaddin was the owner of nearly 50 per cent. of the stock of the association, and had been its president and general manager from its formation. Under his management great earnings were made, and the shareholders had received, as the result thereof, $650,000 in dividends, and the original capital was not impaired, and the company was practically free from debt. Upon the death of V. Wiess, one of the original trustees, the two remaining trustees by the terms of the by-laws were authorized to continue the business of the association until a successor to the deceased trustee was duly elected in the manner provided by the articles of association. Each of the two surviving trustees had equal voice in the management and conduct of the business. McFaddin was solvent, owning property worth a half million dollars. No intentional mismanagement or corrupt action upon his part could have injured plaintiff's one-fourth interest or lessened the earnings that would not have also injured McFaddin's one-half and lessened his earnings, and there is nothing to raise the presumption, much less to show, that McFaddin, to injure the plaintiff or the association, would inflict pecuniary injury upon himself. If, as alleged by the plaintiff, Kyle has refused to act as trustee with McFaddin, his default and dereliction cannot be charged to McFaddin. If he does act with him, each being entitled to one vote in the management of the business, it is impossible that McFaddin could by his acts harm the company, even if he were so inclined. No possible harm could be accomplished by either without the concurrence of the other. McFaddin has shown by his answer that he is ready and willing to act with Kyle.

We hold that the mandatory injunction was improperly granted. As the prohibitory injunction was granted for only such time, and until McFaddin should comply with the mandatory injunction, it necessarily follows, inasmuch as the mandatory injunction cannot be permitted to stand, that the prohibitory injunction falls with it. But we need not rest our decision upon this ground alone, but upon the further ground that plaintiff P. H. Wiess has never, in our opinion, been elected trustee by the surviving trustees, McFaddin and Kyle.

[3] We are clearly of the opinion that the agreement of the other two trustees upon P. H. Wiess as the third trustee, and a recital of such fact in the minutes of the meeting did not, under the by-laws of the association, make him a trustee, but was merely one link in his chain of title to the office, which chain was not complete until full compliance with each of the conditions precedent to his right to be a trustee, as prescribed in article XI. It appears by the terms of article XI that, when a trustee dies, there can be no election by the two surviving trustees, save in the manner prescribed in that article, which is:

"The remaining trustees may choose his successor by a declaration in writing to that effect, duly signed and acknowledged by them and by the trustee so chosen, and said declaration showing the choice of said trustee shall be signed and acknowledged by them and recorded in the deed records of Jefferson county, Tex.," etc.

In the next sentence provision is made for the election of a trustee to fill a vacancy on the board caused by the death of one of the trustees, but in this provision the words "declaration in writing" are not used, but instead it is provided that he shall be elected by the remaining trustees, "and a certificate made, acknowledged, and recorded as hereinbefore provided." We think the argument advanced by appellant in support of this construction of the by-laws is sound, and adopt it as a part of our opinion.

It is manifest that the word "declaration" there used is intended to be synonymous with the word "certificate" used later on in the

same article touching the choice of a trustee, where a trustee dies or refuses or is unable to act, though the language, in case of resignation, is that the remaining trustees may choose his successor by "a declaration in writing." The last words of that provision contained in that first sentence of article XI in respect to the signing and acknowledgment of the declaration and of the acceptance by the new trustee and the filing and recording of them in the deed records are:

"Which both certificates, taken together, shall be conclusive evidence of the fact that such new trustee was duly chosen."

Manifestly the word "which" means, from the context, the same thing as if it had provided in terms that after a trustee had resigned in the prescribed manner, after the two remaining trustees had made their declaration in writing of their choice of the new trustee, after that written declaration had been signed and acknowledged by them and by the new man, after it and the written acceptance by the new trustee had been signed and acknowledged by him, after all these things had been done, then those things, "taken together, shall be conclusive evidence of the fact that such new trustee was duly chosen." Can it be claimed that anything less "shall be conclusive evidence of the fact that such new trustee was duly chosen"? Is it not true that in case of resignation the new man is not duly elected and qualified until all of those prescribed things have been done? The next following provision in that article XI is for the case of the death or refusal or inability to act of any trustee. This provision, each step in the procedure having been precisely prescribed, is briefer than the preceding provision, being:

"A successor in his stead shall be elected by the remaining trustees, and a certificate made, acknowledged, and recorded, as hereinbefore provided."

This manifestly means that precisely the same procedure must be gone through, precisely the same steps must be taken to elect a new trustee, in case of death, refusal, or inability to act, as in a case of resignation. The article then, in the same sentence, after the words "as hereinbefore provided," proceeds:

"And such election and qualification of the new trustee or trustees shall be sufficient to vest all the trust property or estate of said company in the new board of trustees and in like manner and with the same powers and duties as the title and ownership of said property was vested in the original board of trustees."

What can these words mean, except that the new man is not elected and qualified until the very last of the prescribed steps have been taken? How can it be construed to mean anything but that after the two trustees have signed and acknowledged their written certificate or declaration indicating their choice, after the new man has also signed and acknowledged that same paper, after he has signed and acknowledged his written acceptance, after both of these papers have been filed and recorded, then, and not until then, has the "election and qualification" taken place?

Further, this second sentence in article XI, whilst relating directly to the election of a new trustee upon the death or refusal or inability to act of a trustee, must be construed in connection with the entire article, and especially with the preceding sentence, which relates to the election of a new trustee in a case of resignation. Hence the words in the second sentence, "and such election and qualification of the new trustee or trustees shall be sufficient to vest all the trust property or estate of said company in the new board of trustees and in like manner and with the same powers and duties as the title and ownership of the said property was vested in the original board of trustees," apply to any vacancy filled by the two trustees. If this be not true, if the words quoted apply only to the case of a trustee dying, refusing or being unable to act, then it would follow that, in case of a resignation, "such election and qualification" would not be sufficient to vest all the trust property, etc., in the new board in like manner and with the same powers and duties as in the case of the original board.

The third sentence in article XI is a proviso embracing each of the grounds of vacancy before provided for, resignation, death, refusal or inability to act, and relates to the case where the two remaining trustees "cannot agree upon the selection of the third trustee"; then a meeting of the shareholders is to be called and the shareholders are to fill the vacancies, upon nomination of the two remaining trustees, "and this may be done by vote in writing of the holders of the majority of all the outstanding stock of record, casting their votes in favor of one of said nominees; and such vote and election shall be certified to by the two remaining trustees and acknowledged by them and the certificate recorded in the deed records of Jefferson county, and thereafter such elected trustee shall be the duly elected and qualified trustee under this trust." Here again is emphasized the provision running all through this article that election to the board is not the result of a single step, but the culmination of the various steps prescribed, till the last one of which is taken there is no election.

The final paragraph of article XI reads:

"But it is further expressly provided that in the case of a vacancy upon the board for any of the reasons named in this article, until the due selection or election of the third trustee, the two remaining trustees shall have all the powers and duties of the full board until the election of the third trustee takes place."

This is the second proviso in the article and in terms applies to any vacancy, however happening, upon the board. How can it be maintained that there has been "the due

selection or election of the third trustee" until everything has been done that this article prescribes as constituting election and qualification? How can it be claimed, in the face of this express provision, that the two trustees lack any of the powers' and duties of the ·full board merely because one of those steps has been taken, as, for example, the agreement by the two trustees upon a third man?

The final part of this final paragraph provides for the case of two vacancies on the board at the same time, and directs that vacancies are to be filled by the shareholders, "and at such times such vote and election shall be certified to and recorded as herein provided for other elections of trustees; and thereafter the two trustees so elected shall be deemed duly elected and qualified trustees, with all the powers and duties given to trustees under this instrument." Does "thereafter" mean anything but that (1) after the meeting, (2) after the majority vote, (3) after the vote and election have been certified to, and (4) after the certificate· has been filed and recorded, then, and not till then, are the two trustees so elected "deemed duly elected and qualified trustees"? Can it be that after the first two steps, or the first four, have been taken, the two new men "shall be deemed duly elected and qualified trustees"?

The article in each of the two provisions touching the filling of a vacancy in the board, by the shareholders, uses this word "thereafter" to show explicitly that till then the new man is not duly elected and qualified. But it cannot be maintained that any different rule prevails where the vacancy is filled by the two trustees. The words in the second sentence of the article, "and such election and qualification of the new trustee or trustees shall be sufficient to vest all the trust property," etc., in the new board, apply alike, as we think we have shown, to any vacancy filled by the two trustees. Those words can mean only that nothing less than, nothing short of, full compliance with each requirement "shall be sufficient" to constitute "the due selection or election of the third trustee."

It follows from these conclusions that the judgment granting the injunctions should be reversed, and that judgment should be here rendered vacating the same; and it has been so ordered.

Reversed and rendered.