**HENDERSON et al. v. SCOTT OIL & REFINING CO. et al.  (No. 10321.)\***

(Court of Civil Appeals of Texas. Fort Worth. June 16, 1923. Rehearing Denied Jan. 5, 1924.)

**1. Joint-stock companies and business trusts ⊙—1—Association held unincorporated joint-stock company and not corporation, Massachusetts trust, or partnership.**

Where owners of oil lease entered into negotiations with well driller culminating in an association, certain parties being appointed trustees to hold as joint tenants, and not as tenants in common in trust for the benefit of all shareholders, the latter to have no legal right to the trust property or to call for a partition, the shares to be personal property carrying the right of division of profits, *held*, that an unincorporated joint-stock company, as designated under Rev. St. arts. 6149–6154, was created, and not a corporation, partnership, or Massachusetts trust, whose powers must be ascertained from the agreement between the parties.

**2. Joint-stock companies and business trusts ⊙—19—Plaintiffs held not entitled to maintain action on behalf of company.**

Unknown or unnamed person or persons were not authorized to use the name of an unincorporated joint-stock company in a suit instituted, not only without appearing to be with the consent of the managing trustees, under its by-laws, but against some of them for

the value of shares of stock alleged to have been wrongfully converted, and, where this was admitted, a plea in abatement should have been sustained under Rev. St. art. 6149.

**3. Joint-stock companies and business trusts ⬦⟹7—Persons organizing association to handle oil leases and drill for oil held entitled to shares not sold in developing the property.**

Where owners of oil leases and expert driller entered into negotiations, culminating in an association and appointment of trustees to handle the property, the driller to have a one-third equal interest in all profits derived from sale of stock and a one-third equal interest in all stock remaining with the company unsold, *held*, that the owners of the oil leases and the driller were entitled to share the unsold stock, and that it did not become treasury stock or belong to the association as such under Rev. St. arts. 6149–6154.

**4. Joint-stock companies and business trusts ⬦⟹7—Persons may fix value of oil leases turned in for stock in joint-stock company.**

Owners of oil leases entering into negotiations with oil driller and forming an unincorporated joint-stock company, under Rev. St. arts. 6149–6154, in fixing an authorized issue of stock, could fix a prospective or estimated value of the oil leases at least as against those having full knowledge of the fact.

**5. Evidence ⬦⟹419(11)—Parol evidence as to value of oil leases turned in for stock in joint-stock company held inadmissible.**

Parol evidence was inadmissible to prove the actual value of oil leases turned in for a certain number of shares of stock in an unincorporated joint-stock company, under Rev. St. arts. 6149–6154, where the association was formed by the owners of the leases and a driller, being contradictory of written contracts.

On Motion for Rehearing.

**6. Appeal and error ⬦⟹518(4)—Pleading ⬦⟹252(2)—Original petition of no effect after filing of amended petition and not part of record on appeal.**

Upon the filing of an amended petition, the original petition under rules 12 and 14, promulgated for the government of the district and county courts, became of no further effect, and was not even a part of the record on appeal.

**7. Contracts ⬦⟹170(1)—Practical construction adopted where contract ambiguous.**

Where contract is ambiguous, the practical construction of its terms by parties will be adopted, even though the language used may suggest a different construction.

Appeal from District Court, Stephens County; W. R. Ely, Judge.

Action by the Scott Oil & Refining Company and others against W. W. Henderson and others. Judgment for plaintiffs, and defendants appeal. Reversed and remanded.

J. W. Crudgington, of Amarillo, Leaverton & Hardy, of Breckenridge, and Theodore Mack, of Fort Worth, for appellants.

Chas. H. Clark, T. Edgar Johnson, and C. H. Fulwiler, all of Breckenridge, for appellees.

CONNER, C. J. This is an appeal from a judgment in favor of the Scott Oil & Refining Company against W. W. Henderson and Paul P. Scott for the sum of $104,916 as the value of that number of shares of stock of the said association alleged to have been wrongfully converted by said Henderson and Scott.

As we view the case on appeal, there are two controlling questions. They are: (1) Whether the court erred in overruling appellants' plea of abatement; and (2) whether appellants were liable at all upon the ground upon which the judgment is based.

In substance and briefly stated, the facts as presented in the record, material to the questions stated, are that appellants Henderson and Scott were the owners of certain oil and gas leases, and desiring to develop them they entered into negotiations with one George L. Kistler, an expert driller. The negotiations culminated in written contracts, articles of association, and by-laws that will hereinafter be referred to more particularly. The original contract was executed on February 20, 1920, by the terms of which Henderson and Scott agreed to transfer to an association to be known as the Scott Oil & Refining Company some six several parcels of land, each owning three parcels, and all of which were particularly described in the agreement. The values of these leases were not stated. The original agreement provided that "George L. Kistler shall have a one-third equal interest in the above-described properties, furnishing all tools necessary for the drilling of well No. 1" on a designated tract of land; "said Kistler to furnish all labor necessary for the drilling of the well above described to a depth of 3,500 feet, unless oil in paying quantities is produced at a lesser depth."

The agreement further recited that said Kistler "in the event that no oil is produced in paying quantities on well No. 1 on the Vance lease, the said Kistler is to be reimbursed in cash by Scott Oil & Refining Company for the drilling of such well, said reimbursement to be charged up to his interest in the Scott Oil & Refining Company."

It was further provided that in event the first well was a producing one "all of the tools used in the drilling of said well are to become the property of said Scott & Refining Company," and that "in the event that well No. 1 is a dry hole, then the said Kistler is to take his tools off of the Max Vance lease and drill well No. 2, * * * to be drilled under the same terms and conditions as well No. 1."

It was further agreed that "the firm of T. Edgar Johnson and Charles H. Clark, attorneys at law at Breckenridge, Tex., shall be

and are hereby selected to represent as legal advisers the Scott Oil & Refining Company, and in lieu of such services rendered and to be rendered by said T. Edgar Johnson and Charles H. Clark they are to receive 2,000 shares of the stock in the Scott Oil & Refining Company." This agreement was signed and acknowledged by the parties on February 20, 1920.

On March 15, 1920, after the execution of the foregoing agreement, articles of association, by-laws, and a declaration of trust were made out and duly signed by the five persons heretofore named, to wit, Henderson, Scott, Kistler, Clark, and Johnson. In the instruments referred to it was recited that the parties named had been duly appointed trustees of the association to hold office until their successors should be elected by the majority of the stockholders, and it was further recited that such trustees should hold all the property of the association "as joint tenants and not as tenants in common, in trust for the benefit of all shareholders in proportion to the number of shares held by each in said company." It was further provided that the shareholders should have no legal right to the trust property or to call for a partition of the trust property and dissolution of the trust; but the shares were to be "personal property," carrying the right of division of the profits, and to a division of the principal and profits in event of a dissolution of the association as provided for.

It was further provided that the death, insolvency, or bankruptcy of a shareholder or a transfer of his interest should not operate as a dissolution of the company or trust, or have any effect upon the company or its mode of business. The declaration of trust further declared that the "trustees shall, by a vote of the majority of the board, have full power and authority to conduct the business and the affairs of the company." The trustees were expressly given power to execute contracts in the company's name or in the name of the trustees; to purchase, lease, or otherwise acquire property, make repairs, extensions, and additions which they might deem necessary; to convey any part of the property of the company; to borrow money on the credit of the company, secure the same by mortgage or deed of trust on such terms as they might deem proper; and, "generally, to do all things which in their judgment are necessary and prudent in the management and conduct of the business of the company."

Other statements of the facts shown by the record will be made in disposing of the second question that we have thought to be controlling, but that which we have already stated we think will be sufficient as an introduction to our conclusion upon the first question.

[1, 2] In our opinion, the court erred in failing to sustain the appellants' plea in abatement. In other words, as we view the record, the plaintiffs in the suit failed to show the proper authority therefor. It is quite clear, we think, that the association was not a corporation, and we agree with appellees that as instituted it was not a Massachusetts trust. See McCamey v. Hollister Oil Co. (Tex. Civ. App.) 241 S. W. 689, where the subject is elaborately discussed. Nor was it a partnership either general, or a limited one under chapter 1, title 102, of our Revised Statutes. On the contrary, it is evident that it was intended as an "unincorporated joint-stock company," as designated in chapter 2 of title of the statutes already referred to. Indeed, the articles of association and declaration of trust so designate the company, as well as contain provisions which clearly differentiate the association from an incorporated body or a partnership as generally understood. It follows, we think, that the appellee association is without legal existence, entity, or authority, except such as is given it by our statutes and by the terms of the agreement between the parties. It is provided in said chapter of title 102, article 6149, that such companies "may sue or be sued in any court of this state having jurisdiction of the subject-matter in its company or distinguishing name." But the status or powers of such association are not otherwise given. We can therefore look only to the terms of the agreements between the parties to ascertain its powers. By reference to those agreements it is plainly provided that a majority of the trustees have the full authority, control, and management of the business of the association. The record before us discloses that three of the trustees, to wit, a majority, are made defendants. Neither stockholder or trustee is made a plaintiff. In the very nature of the subject, as it seems to us, the question of whether the association should institute and prosecute litigation that might be long continued and expensive is one of serious import, calling for intelligent and careful consideration, and hence, at least by implication, included within the powers vested in the trustees of the appellee association. Some person or association of persons must be called upon to determine the advisability of such litigation, and those persons, under the agreements before us, were the appellants. It is true that a stockholder, or stockholders, under the allegations of the petition, might, in their own name and in the name of the association, sue the majority trustee, as done in this case, under allegations of a breach of the trust. See 7 R. C. L. p. 311; Ackermann v. Ackermann Schuetzen Verein (Tex. Civ. App.) 60 S. W. 366; Cowles v. Glass (Tex. Civ. App.) 30 S. W. 293, and other authorities that might be cited. But we know of no case, and none has been cited, where an unknown and unnamed person or persons are authorized to use the name of an unincorporated association—a legal fiction only—in a suit instituted not only without

the authority and consent of the controlling and managing trustees, but against them. It is true that to the petition in this case there is signed the names of T. Edgar Johnson and Chas. H. Clark and C. H. Fulwiler, but the names are signed as "attorneys for plaintiffs," and not as trustees or 'stockholders. In other words, in their own name and in their own interest they seek no recovery or appear as parties litigant, and we therefore finally conclude on this branch of the appeal that the court should have sustained the plea in abatement, as alleged by appellants.

[3, 4] In the consideration of the further question of whether appellants were shown to be liable on the ground of having wrongfully converted the capital stock of the association, we will add to the general statement hereinbefore given that the record discloses that on June 10, 1920, the written agreement originally entered into on February 20, 1920, was corrected by a written instrument executed by all the trustees, reciting that by mutual mistake the interest of George L. Kistler had originally been stated as "a one-third equal interest in the above-described property," whereas the real understanding and agreement was that George L. Kistler was to "share equally with W. W. Henderson and Paul P. Scott in all profits derived from the sale of stock in the said Scott Oil & Refining Company, and shall have one-third equal interest in all stock of the Scott Oil & Refining Company remaining with the company and unsold, in consideration of the said George L. Kistler furnishing all tools necessary for the drilling of well No. 1 on the tract of land known as the Max Vance lease, and all labor necessary for the drilling of said well to depth of 3,500 feet unless oil in paying quantities is produced at a lesser depth."

It should be further stated that the agreements, articles of association, and by-laws are susceptible of the construction that it was contemplated that sufficient stock of the association should be sold to drill well No. 1, but the association succeeded in selling through agents, who were to receive commission for the sale, only some $13,967 of the stock, and the well was completed with moneys borrowed by Scott and Henderson, and came in as a large producer some time in May, 1920. It also appears that of the capital stock some 18,200 shares were issued in payment of one of the leases and gratuitously distributed among the wives of the trustees, well drillers, and perhaps others, including the wife of one of the attorney trustees and the promised wife of another, all without objection on the part of any of the trustees or other person. About May 19, 1920, or perhaps shortly before, the stock was taken off the market, and all unsold and undistributed stock divided equally between the trustees, Scott, Henderson, and Kistler, who,

in regular meeting on May 19th, from the proceeds arising from well No. 1 and in accord with the trust specified in the trust agreements, "in proportion to the numbers of shares held by each in said company," declared a 50 per cent. dividend upon all the stock of the association, and later, to wit, some time in September, declared another dividend of 27½ per cent. on such stock.

There is no complaint that any stockholder failed to receive the dividends named upon his stock; the complaint is that Scott, Henderson, and Kistler unlawfully appropriated to themselves the unsold stock and the dividends thereon. As it seems to us, whether they did this rightfully or wrongfully is dependent upon the terms of the agreements between the parties. These three furnished all of the property upon which the capital stock was based. It was shown by parol testimony, over the objection of appellants, that it was immaterial and contradictory of the written agreements that the value of the leases owned by Henderson and Scott was $10,000; and which they agreed to transfer to the association for $50,000 of its stock, but these facts do not appear on the face of the agreement, and we know of no reason why persons owning properties of the kind may not in fixing an authorized issue of stock fix a prospective or estimated value at least as against those having full knowledge of the facts, and in this case, as has already been shown, no purchaser of stock complains that he purchased without knowledge or because of any false representation of the real value of the assets of the association. It should perhaps be further observed in this connection that the ultimate developments seem to fully support the estimated value of the assets as originally combined, and we think the necessary legal implication from the written agreements is that Scott, Henderson, and Kistler were the owners of and entitled to share and share alike all unsold stock. It is true the agreements do not specifically provide that Scott and Henderson are entitled to a one-third interest in either the properties or the stock, but it was so expressly provided as to the trustee Kistler and a consideration of the terms of the agreement in this respect plainly show, as we think, that the share of Scott and Henderson, each was equal to that of Kistler. Kistler's interest, to repeat, was originally stated to be "a one-third equal interest in the above-described properties"; the properties referred to being the leases owned and contributed by Scott and Henderson. Later, Kistler's interest was stated to be, as already shown, "a one-third equal interest in all stock of the Scott Oil & Refining Company remaining with the company and unsold." To whom belonged the other undivided two-thirds interest? Certainly not to purchasers of specific shares of stock, nor to the

attorneys Clark and Johnson, to whom were allotted a specific number of shares. Neither the agreements, articles of association, or by-laws provided that all or any part of the capital stock should be treasury stock or belong to the association as such, and the jury answered "No" to the following special issue:

"Was it understood between the promoters and trustees of the Scott Oil & Refining Company that in the event sufficient stock was not sold to pay the expenses of drilling the first two wells of said company that the remaining stock should belong to the treasury of the company?"

In section 3421, vol. 5, Fletcher Cyclopedia Corporations, it is stated that:

"Treasury stock is stock reserved at the time of organization as assets of the corporation and the stockholders to be used in furtherance of corporate purposes. In respect to mining stock it has been held to mean 'such stock as is set aside for the actual development of the property.' * * * Stock to be held by the corporation as unsubscribed for and unissued is not treasury stock."

In the next section (3422) it is said:

"'Promotion stock' of a mining company 'is such stock as is issued to those who may originally own the mining ground or valuable rights connected therewith, in consideration of their deeding the same to the mining company when the company is incorporated, or it may mean such stock as is issued to promoters, or those in some way interested in the company, for incorporating the company, or for services rendered in launching or promoting the welfare of the company, such as advancing the fees for incorporating, attorney's fees, surveying, advertising, etc."

In this case there is no allegation or proof that it is necessary or advantageous that the unsold stock should be sold in order to procure moneys with which to further develop the property of the association or to conduct its business. This all may be done, so far as the record shows, in the judgment of the controlling trustees out of the production of the oil wells on the associated leases. It may be further stated that the distribution of the unsold stock, as above related, was not found to be so done with any corrupt purpose, even if unauthorized in a legal sense. In other words, such distribution between Scott, Henderson, and Kistler was apparently done in good faith and without any actual fraud.

[5] It follows, if correct in the conclusions announced, that the parol testimony to the effect that the actual value of the leases owned by Scott and Henderson was but $10,000, and was transferred to the association for 50,000 shares of its stock, was not only immaterial but also contradictory of the written contracts, and hence in violation of the well-known rule on that subject, for plain legal implications arising from the terms of a written contract are as fully protected by the rule as the terms themselves. In 10 R. C. L. p. 1046, it is said:

"As a rule, parol evidence is not admissible to vary a written contract, either by showing that its expressed terms, or its legal construction and effect, do not accord with the previous agreement of the parties. Whatever the law implies from a contract in writing is as much a part of the contract as that which is therein expressed, and if the contract, with what the law implies, is clear, definite, and complete, it cannot be added to, varied, or contradicted by extrinsic evidence."

The case as presented is not, we think, one of ordinary promoters effecting a sale of property owned by them to a corporation afterwards formed as a profit without the assent or knowledge of the managing officers or stockholders. On the contrary, it is more in the nature of agreements and proceedings by persons forming a partnership and whose rights as partners are to be determined by the agreements between them.

For the reasons indicated, it is ordered that the judgment below be reversed and the cause remanded for further proceedings, if any, not inconsistent herewith.

### On Motion for Rehearing.

[6] Appellees have presented a very earnest and forceful motion for rehearing, which has been carefully answered in behalf of appellants. After a consideration of the motion and its reply, we feel confirmed rather than otherwise in the conclusion expressed in our original opinion that the court erred in failing to sustain appellants' plea in abatement. We think that when articles 7 and 14 of the association and articles 3, 4, and 7 of the declaration of trust, and article 2 of the association's by-laws are all carefully considered, it leads to the conclusion that in legal effect the suit, as presented in appellees' amended petition, upon which they went to trial, was against three of the trustees, as stated in our original opinion. See McFadden v. Wiesse (Tex. Civ. App.) 168 S. W. 486. But, if mistaken as to this because of the fact appearing in the evidence that Henderson in March, 1921, agreed to sell his interest in the stock of the company and tendered his resignation as secretary and treasurer, and that such resignation was accepted, it would yet be true that neither allegation nor proof shows that a successor was elected in his place, or, if so, who he was. So that, at all events, the suit was against two of the undisputed trustees in the name of the corporation upon a petition which is entirely silent as to the will or any action on the part of the remaining two trustees. True, counsel who signed the petition were named in the articles of the association as trustees,

but they do not sue or appear as plaintiffs, their names are signed simply as counsel and not as trustees. We do not think any effect can be legally given to the fact that the original petition in this case was in the name of the association, joined by some of the trustees and certain of the stockholders, for, upon the filing of the amended petition, the original petition under rules 12 and 14, promulgated for the government of the district and county courts, became of no further effect, and not even properly a part of the record on this appeal. We accordingly feel that we must adhere to our ruling as originally expressed on the appellants' plea in abatement.

Nor do we see our way clear to reverse our ruling upon the second question discussed in our original opinion, particularly in view of the fact that as pointed out and as asserted by appellants in their answer to the motion there was evidence tending to show that the parties to the written agreements and articles of association substantially construed those instruments and treated the rights of the parties thereto in accord with the interpretation given them in our original opinion. For instance, there was testimony to the effect that Scott, Henderson, and Kistler agreed upon the amount of the capitalization of the association before they went to get Mr. Johnson as attorney; and that it was also agreed between the three first named that they would give each of their wives $500 of the stock, and also give some stock to Mr. Clark's wife and to Mr. Johnson's intended wife, and that in doing so neither Mr. Johnson nor Mr. Clark were consulted; that "we acted on that just as three partners"; that neither Mr. Clark nor Mr. Johnson ever made any claim at any time or anywhere to Mr. Scott; that he and Mr. Henderson had each agreed to put in their leases for $25,000 of the capital stock of the company. Mr. Scott testified substantially that he was present at the time Mr. Henderson and Mr. Kistler agreed upon the sale of Mr. Henderson's stock, and that nothing was said by any of the parties by way of protest to the right of Mr. Henderson to the stock sold, which amounted to some 71,000 shares, and that no complaints were made upon the payment of dividends on the apportionment of stock as claimed by Scott and Henderson.

[7] It is well settled in the authorities that, even though a contract be ambiguous, the practical construction of its terms by the parties will be adopted, even though the language used may suggest a different construction. See 6 R. C. L. 852–854; Railway Co. v. Johnson, 74 Tex. 256, 11 S. W. 1113; Bounds v. Hubbard City, 47 Tex. Civ. App. 233, 105 S. W. 56.

We conclude the motion for rehearing must be overruled.