

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable O. P. Lockhart, Chairman
Board of Insurance Commissioners
Austin, Texas

Dear Sir:

Opinion No. O-3810
Re:  Is a domestic unincorporated
joint stock company a legal
entity, such as is competent
under our Constitution and
statutes to qualify for exercis-
ing the powers enumerated in
Article 4982 by complying with
the requirements of that Arti-
cle and Article 4983?  And re-
lated questions.

You have requested our opinion on the above question
and other questions stated.  We think it proper to first set
out the facts contained in your first letter (substituting a
fictitious name for the company involved), and then take up
each of your questions in turn.  The facts given are as follows:

"The U. J. S. Company is a domestic unin-
corporated stock company, organized and operat-
ing under the provisions of Title 105, Chapter
2, of the Revised Civil Statutes of Texas, 1925,
and has taken the steps necessary (if it be
otherwise legally competent to obtain such priv-
ileges) to qualify for operation under, and holds
a certificate of compliance with, Articles 4982
and 4983, issued by the Board of Insurance Com-
missioners."

Question No. 1:

"Is said U. J. S. Company a legal entity,
such as is competent under our State Constitu-
tion and Statutes to qualify for exercising the
powers enumerated in Article 4982 by complying

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

with the requirements of that Article and
4983?"

Article 4982 is as follows:

"Any person or association of persons,
any State Banking corporation or any other
domestic corporation, or any corporation or-
ganized under the laws of any other State,
provided such foreign corporation complies
with the laws of this State relating to in-
surance other than life, may exercise the
following powers by complying with the provi-
sions of this subdivision:

"1.  Qualify as guardian, curator, execu-
tor, administrator, assignee, receiver, trustee
by appointment of any court or under will, or
depository of money in court, without giving
bond as such.

"2.  Become sole guarantor or surety in
or upon any bond required to be given under
the laws of this State, any other statute to
the contrary notwithstanding."  (Underscoring
ours)

Article 4983, Vernon's Annotated Texas Civil Stat-
utes, provides that those included in this subdivision, in
order to exercise the powers granted in Article 4982 shall:
(1) make a deposit of $50,000.00 in the State Treasury; (2)
satisfy the Commissioner of solvency; (3) maintain specified
premium reserves; (4) file annual sworn report; (5) pay taxes
on business written.

The U. J. S. Company is an unincorporated joint
stock company organized and operating under the provisions
of Title 105, Chapter 2, Revised Civil Statutes of 1925.  An
"unincorporated joint stock company" has been defined in
Allen v. Long, (Tex. Sup. Ct.) 80 Tex. 261, 25 Texas Juris-
prudence 171, and 20 R. C. L. 321, as follows:

"An unincorporated joint stock company
may be defined as an association of indivi-
duals for the purpose of profit, possessing
a common capital contributed by the members
composing it, such capital being commonly
divided into shares, of which each member

42

holds one or more, and which are transferable
by the owner; the business of the association
being under the control of certain selected
individuals called directors or trustees.
Such an organization or association enjoys
existence as a legal entity; and, indeed, the
status of joint stock companies is recognized
by the statutes. . . ."

It is our opinion that the U. J. S. Company, an un-
incorporated joint stock company organized and doing business
under the provisions of Title 105, Chapter 2, of the Revised
Civil Statutes of Texas, 1925, is an "association of persons"
such as is competent under our State Constitution and statutes
to qualify for exercising the powers enumerated in Article 4982
by complying with the requirements of Articles 4982 and 4983.

Question No. 2:

"Is the Board of Insurance Commissioners
legally authorized to issue to the U. J. S.
Company its certificate showing such concern's
compliance with Articles 4982 and 4983, and of
its authority to exercise the powers prescribed
in Article 4982?"

We are of the opinion that the Board of Insurance
Commissioners has legal authority to issue to U. J. S. Com-
pany a certificate showing such concern has complied with
Articles 4982 and 4983, and has authority to exercise the powers
prescribed in Article 4982. However, such certificate should
not be issued until the Board of Insurance Commissioners has
been furnished proof that such company is authorized by its
charter to engage in such business. In this connection we
refer you to our answer to Question No. 3.

Question No. 3:

"Is U. J. S. Company, having complied with
the provisions of Articles 4982 and 4983, and hav-
ing received the certificate or permit therein
mentioned from the Board of Insurance Commissioners,
legally authorized to write as surety the bonds
required of insurers and officials of insurers by
the provisions of (1939) Senate Bill 135, Section 5,
(Title 78, Chapter 22, Article 5068-1, Section 5)?"

Although Article 4982 states that any of those named
therein, upon a compliance with said Article and Article 4983,

"may exercise the following powers. . .", yet we think it is not to be assumed that a mere compliance therewith authorizes any person, association of persons, or corporation, not otherwise qualified, to exercise the powers therein named. For instance, an ordinary domestic corporation, although it might otherwise exercise the powers enumerated in Article 4982, must meet the further requirement of being so authorized by its charter.

In the case of Henderson, et al v. Scott Oil & Refining Co., et al, 258 S. W. 1082, the Fort Worth Court of Civil Appeals pointed the way for the determination of the powers of an unincorporated joint stock company. We quote from that opinion:

"It is quite clear, we think, that the association was not a corporation, and we agree with appellees that as instituted it was not a Massachusetts trust. See McCamey v. Hollister Oil Co. (Tex. Civ. App.) 241 S. W. 689, where the subject is elaborately discussed. Nor was it a partnership either general, or a limited one under chapter 1, title 102, of our Revised Statutes. On the contrary, it is evident that it was intended as an 'unincorporated joint-stock company,' as designated in chapter 2 of title of the statutes already referred to. Indeed, the articles of association and declaration of trust so designate the company, as well as contain provisions which clearly differentiate the association from an incorporated body or a partnership as generally understood. It follows, we think, that the appellee association is without legal existence, entity, or authority, except such as is given it by our statutes and by the terms of the agreement between the parties. It is provided in said chapter of title 102, article 6149, that such companies 'may sue or be sued in any court of this state having jurisdiction of the subject-matter in its company or distinguishing name.' But the status or powers of such association are not otherwise given. We can therefore look only to the terms of the

Honorable O. P. Lockhart, Page 5

agreements between the parties to ascertain
its powers. . . ."

(Note: Title 102, referred to above, is now Title
105; and Article 6149 is now Article 6133.)

Our opinion, controlled by the holding in the above
case, is that the terms of the agreement between the parties
forming an unincorporated joint stock company such as the
U. J. S. Company, determine whether such a company, upon com-
pliance with Articles 4982 and 4983, is legally authorized to
write as surety the bonds required of insurers and officials
of insurers by the provisions of Article 5068-1, Section 5.
If by the terms of such agreement the company is so authoriz-
ed, and it has complied with Articles 4982 and 4983, then it
is our opinion that the Board of Insurance Commissioners is
legally authorized to issue to said company its certificate
of authority to exercise the powers prescribed in Article
4982.

The amendment of the articles of association, re-
lied upon by the company, as authorizing it to transact such
business, (omitting the signatures and substituting fictitious
names) is as follows:

"AMENDMENT OF THE ORIGINAL ARTICLES OF THE
U. J. S. COMPANY

"AMENDMENT TO OPERATE UNDER ARTICLE 4982

"A meeting of the stockholders and officers
of the U. J. S. Company, of Palo Alto, Texas was
held on December 5, 1941, and the meeting was
called for the purpose of adopting the following
amendments:

"A motion was made by Les Marvin, Vice-
President of the company, to amend the purpose-
clauses of the articles of association.

"Since the company had deposited the stat-
utory deposit with the Insurance Department to
qualify to write fidelity, surety, and guaranty
under Article 4982, the amendment is to provide
the segregation of assets of the company as
follows:

"1. All assets and liabilities under all
other purposes are to be kept entirely

Honorable O. P. Lockhart, Page 6

separate, and a separate statement made to the Securities Division of the Secretary of State.

"2. All premiums collected and other assets presumably liable for the payment of the company's obligations incurred during its operations under Article 4982, are to be kept and reported to the Insurance Department in the following manner:

"a. Unearned premium reserve
b. Claim reserve
c. Investments to meet requirements of the insurance laws
d. Cash
e. Contingent reserve, tax reserve, etc.
f. Accounts Receivable

"3. The company's operations under Article 4982 shall be according to Statutory provisions which are as follows:

"a. Qualify as guardian, curator, executor, administrator, assignee, receiver, trustee by appointment of any court or under will, or depository of money in court, without giving bond as such.

"b. Become sole guarantor or surety in or upon any bond required to be given under the laws of this State, any other statute to the contrary notwithstanding.

"A vote was taken and the amendment carried, there being sixty percent of the outstanding stock represented, and the following officers were present and voted: L. M. Barrett, President; Les Marvin, Vice-President; and James C. Westerfall, Secretary-Treasurer.

"In witness whereof, this amendment is signed by the company's President and attested by its Secretary-Treasurer, and its seal hereunto affixed,

this 5th day of December, 1941, A. D." (Under-
scoring ours)

Section 16 of the original articles of association
is as follows:

"The fiscal year of the Officers shall end
as of December 31 of each year. Annual meetings
of the stockholders for the transaction of busi-
ness shall be held at any office of the Company
in the State of Texas, or any other designated
office, on the first Monday before December 31
in each year beginning with the year 1939 of
which meetings notice shall be given by the
Secretary by mail to each stockholder at his
registered address at least ten days before said
meetings. Special meetings of the stockholders
may be called at any time by ten days notice as
above stated when ordered by the President. At
all meetings of the stockholders each holder of
shares of stock shall be entitled to one vote
for each share held by him and each stockholder
may vote by written proxy. 51% of the votes
cast shall determine any question under considera-
tion or the election of any Officer."

However, Section 22 of said articles provides:

"This Agreement shall not be altered or
amended by the Officers, but only by the stock-
holders at any regular meeting or special meet-
ing called for that purpose and then by a vote
of 51% of the outstanding shares of the company's
stock."

Thus, while Section 16 authorizes the determination
of other questions by a vote of 51% of the votes cast, yet
Section 22 requires, for an amendment of the Articles of Agree-
ment, a favorable vote of 51% of the outstanding shares of
stock. We note that the amendment submitted does not recite
facts showing that notices of the stockholders' meeting of
December 5, 1941, were mailed as provided for in Section 16.
It shows that that 60% of the outstanding stock was repre-
sented in the meeting, but not that 51% of the outstanding
stock was voted in favor of the amendment. Nor does there
appear to be any other evidence of such facts before the board.

We think the amendment, if it was passed in accordance with the provisions of the Articles of Agreement, is sufficient to authorize the company to engage in the activities provided for under Article 4982, but that the Board of Insurance Commissioners should not recognize it until it is proven to be a valid amendment.

Question No. 9:

"In making examinations of the affairs of this company as provided by law, and particularly in satisfying itself in accordance with Section 2 of Article 4983 as to whether such company 'is solvent and has made the required deposit' is it (1) the legal duty (2) the legal privilege of this Board in its discretion, to examine all of the assets, liabilities, affairs and condition of the company throughout its activities both under Article 4982 and otherwise and to determine its solvency in the light of all such matters, as this Board conceives its duty and right to be, or is this Department restricted by law to an examination of the assets, liabilities, affairs and condition of such company only in so far as they are directly involved in Article 4982 operations as contended by the Company?"

Section 2 of Article 4983 requires that, before the company operates under the provisions of Article 4982, it shall "satisfy the Commissioner of its solvency." Under Article 4682a all the powers, duties and prerogatives formerly vested in or devolving upon the Commissioner of Insurance are now conferred upon the Board of Insurance Commissioners.

Section 2 does not limit the question of solvency to a determination of the financial status of the Article 4982 business of the company, standing alone and without relation to its other business. On the contrary, the import of the language used is that the company must be determined to be solvent as a whole. This particularly is true in view of the fact that some of the company's prospective assets under its Article 4982 operations (for instance, undivided profits over and above the statutory deposit and premium reserve) will be liable for its debts incurred under other operations.

We are of the opinion that the Board of Insurance Commissioners has both the privilege and the duty to deter-

mine the solvency of the company as a whole. They may do this by an examination of all of the assets, liabilities, affairs and condition of the company throughout its activities, both under Article 4982 and otherwise.

### Question No. 10:

"If you answer in response to question 9 that this Board is either required or authorized to examine all assets, liabilities, affairs and condition of such company, involved both under Article 4982 and otherwise, and to determine its solvency in the light of all such matters, then please advise us whether in determining its solvency this Board is (1) required, or authorized in its discretion, by law to apply the ordinary test or standard of solvency by approving as 'admitted assets' at 10% of their appraised value all assets of the company under its 'other operations', as contended by the company; or (2) whether, on the other hand, as conceived by this Board, our examiners should determine solvency under what may be denominated 'the insurance standard', both under the 4982 operations and its other operations, by admitting assets only of the classes and with the margins of safety in value provided by the insurance statutes?"

Article 4986, which relates to companies operating under Article 4982, provides:

"All articles of the statutes so far as the same are applicable and not inconsistent with the provisions of law governing banks and banking corporations shall apply to all companies doing business hereunder."

The "insurance standard" used in determining solvency consists in the practical application of the requirements of Articles 4705, 4706 and 4993, Revised Civil Statutes of 1925, as amended - at least, we so understand your use of the phrase. In our conference opinion No. O-958, addressed to Honorable Walter C. Woodward, Chairman of the Board of Insurance Commissioners, we expressed the opinion that Articles 4705 and 4706 applied only to insurance companies created under Chapter 2, Title 78, Revised Civil Statutes of Texas, and that Article 4993 applied only to casualty insurance companies

Honorable O. P. Lockhart, Page 10

created under Chapter 18 of Title 78. We enclose herewith a copy of opinion No. O-958. As pointed out in your opinion request, the company here under consideration is organized under the provisions of Chapter 2 of Title 105.

We are therefore of the opinion that the Board of Insurance Commissioners is not authorized to apply such "insurance standard" in determining solvency under the provisions of Article 4983. We believe that the Legislature, in using the word "solvency" in this statute, meant that such company must satisfy the Commissioner (now the Board of Insurance Commissioners) that it is possessed of assets equal to its liabilities, coupled with an ability to meet its obligations as they mature, and that its debts can be collected by legal process. Woodley, et al v. Cottle County, 52 S. W. (2d) 530; Werner v. Crippen, 282 N. Y. S. 722; Kennedy v. Burr, (Wash.) 171 P. 1022. "The term 'solvent', when applied to a person, means that he has property sufficient to pay all his debts, and that all his debts can be collected by legal process." 39 Words and Phrases 475 (citing numerous cases). This, in our opinion, is the standard to be applied in determining solvency. The method of applying the standard is left to the judgment and discretion of the Board of Insurance Commissioners. And the decision of the Board as to solvency or insolvency is controlling, unless it appears by convincing evidence that its action is plainly arbitrary and made in bad faith. United States Savings Bank v. Morgenthau, 85 Fed. (2d) 811, 814.

We have respectfully declined to answer your questions numbered 4, 5, 6, 7 and 8, for the reason that these inquiries evidently are the concern of the joint stock company itself, and do not involve any question which is currently before your department in its official capacity.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *W. R. Allen*

W. R. Allen
Assistant

By *Cecil D. Redford*

Cecil D. Redford
Assistant

APPROVED JUL 14. 1942

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

WRA:GO

ENCLOSURE

THIS OPINION CONSIDERED AND APPROVED IN LIMITED CONFERENCE